# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| IN RE: DOLLAR GENERAL CORP.<br>MOTOR OIL MARKETING AND<br>SALES PRACTICES LITIGATION | MDL No. 2709<br><br>Master Case No.<br>16-02709-MD-W-GAF |

**THIS PLEADING RELATES TO:**

| | |
|---|---|
| ROBERT OREN V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00105 |
| ROBERTO VEGA V. DOLGENCORP, LLC; | Case No. 4:16-cv-00518 |
| ALLEN BROWN V. DOLLAR CORP., ET AL.; | Case No. 4:16-cv-00519 |
| BRADFORD BARFOOT V. DOLGENCORP, LLC; | Case No. 4:16-cv-00520 |
| GERARDO SOLIS V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00521 |
| NICHOLAS MEYER V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00522 |
| JOHN FOPPE V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00523 |
| JOHN MCCORMICK, III V. DOLGENCORP, LLC; | Case No. 4:16-cv-00524 |
| BRUCE GOOEL V. DOLGENCORP, LLC; | Case No. 4:16-cv-00525 |
| SCOTT SHEEHY V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00526 |
| JANINE HARVEY V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00528 |
| WILLIAM FLINN V. DOLGENCORP, LLC; | Case No. 4:16-cv-00529 |
| KEVIN GADSON V. DOLGENCORP, LLC; | Case No. 4:16-cv-00530 |
| MIRIAM FRUHLING V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00531 |
| ROBIN PREAS V. DOLLAR GENERAL CORP., ET AL.; | Case No. 16-02709 |
| JAMES TASCHNER V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00606 |
| JASON WOOD, ET AL. V. DOLLAR GENERAL CORP., ET AL.; | Case No. 4:16-cv-00607 |
| BRANDON RAAB V. DOLGENCORP, LLC; | Case No. 4:16-cv-00868 |
| SEIT ALLA V. DOLGENCORP, LLC | Case No. 4:17-cv-00413 |

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

TABLE OF AUTHORITIES ................................................................................................ v

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND SUPPORTING CLASS CERTIFICATION........................ 2

III.    LEGAL STANDARD FOR CLASS CERTIFICATION ................................................ 12

    A.  Rule 23(a) requires a showing of numerosity, commonality, typicality, and adequacy.... 13

    B.  Rule 23(b)(3) requires a showing of predominance and superiority. ................................ 16

IV.     LEGAL ARGUMENT ............................................................................................ 18

    A.  The Court should certify Plaintiffs' Nationwide Unjust Enrichment Class. .................... 19

        1.  Rule 23(a) requirements are met. .......................................................................... 21

        2.  Common Questions of Fact and Law Predominate.......................................... 23

            i.      Statutes of limitation and tolling ............................................................ 26

            ii.     Directly conferred benefit........................................................................ 27

            iii.    The level of misconduct ........................................................................... 28

            iv.     Available defenses.................................................................................... 28

            v.      Adequate remedy at law .......................................................................... 29

            vi.     Independent cause of action..................................................................... 31

        3.  Superiority........................................................................................................ 31

            i.      Statutes of limitations .............................................................................. 32

            ii.     Adequate remedy at law .......................................................................... 33

            iii.    Independent cause of action ..................................................................... 34

    B.  The Court should certify Plaintiffs' Nationwide Implied Warranties Class..................... 35

        1.  A choice-of-law analysis results in the application of Tennessee law .......................... 35

        2.  Rule 23(a)'s requirements are satisfied. ................................................................ 39

        3.  Rule 23(b)(3)'s requirements are satisfied. ............................................................ 41

            i.      Common questions of fact and law predominate over the issues presented by the Nationwide Implied Warranties Class under Tennessee law............................................. 41

                a.  Implied Warranty of Merchantability ...................................... 41

                b.  Implied Warranty of Fitness for Particular Purpose .............................. 43

            ii.     Assuming arguendo that the laws of multiple states apply, certification is nevertheless appropriate for a Multi-State Implied Warranties Class.................................................... 45

                a.  The Multi-State Implied Warranties Class satisfies Rule 23(a)'s requirements..... 46

    b.    The Multi-State Implied Warranties Class satisfies Rule 23(b)(3)'s requirements.46

        i.    Implied warranty of merchantability ................................................................... 46

        ii.    Implied warranty for fitness for a particular purpose ........................................ 47

    c.    There are no dispositive state-specific issues or individualized issues that would predominate the Multi-State Implied Warranties Class. ................................................. 48

        i.    Vertical Privity ................................................................................................... 49

        ii.    Notice of Breach ................................................................................................. 49

        iii.    Statutes of Limitations ...................................................................................... 51

        iv.    Buyer Misuse of the Product .............................................................................. 51

    d.    A class action is superior to other methods for Plaintiffs and the class' implied warranty claims. ............................................................................................................. 52

C.    Alternatively, the Court should certify Plaintiffs' U.C.C. state sub-classes for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and unjust enrichment. ............................................................................................. 53

    1.    In the alternative to certifying the Nationwide Implied Warranties Class or the Multi-State Implied Warranties Class, the Court should certify state-subclasses as to Plaintiffs' implied warranty of merchantability and implied warranty of fitness for a particular purpose. .................................................................................................................................. 53

        i.    Rule 23(a)'s requirements are satisfied. ............................................................ 54

        ii.    Rule 23(b)(3)'s requirements are satisfied ........................................................ 54

        a.    Predominance of Common Issues of Law and Fact............................................ 54

        i.    Implied Warranty of Merchantability ............................................................... 55

        ii.    Implied Warranty of Fitness for Particular Purpose.......................................... 55

        iii.    Absence of Dispositive Individualized Issues .............................................. 56

        1.    Vertical Privity ................................................................................................... 56

        2.    Notice of Breach ................................................................................................. 56

        3.    Statutes of Limitations ....................................................................................... 58

        4.    Buyer Misuse of the Product .............................................................................. 58

        b.    Superiority of a Class Action ............................................................................. 58

D.    The Court should certify a class regarding Plaintiffs' state unfair trade practices/consumer fraud statutory claims. ........................................................................................................... 59

    1. Plaintiffs' sub-classes asserting statutory consumer protection claims satisfy Rule 23(a) ................................................................................................................... 60

    2.    Plaintiffs' sub-classes asserting statutory consumer protection claims satisfy Rule 23(b) ................................................................................................................... 61

        i.    Common questions of liability predominate over any required individualized showing of reliance.................................................................................................................... 61

ii.   Plaintiffs' also satisfy predominance as to their statutory consumer protection claims that do not require an individualized showing of reliance**.**................................................. 63

3.   A class action is superior to any other available methods for fairly and efficiently adjudicating Plaintiffs' consumer protection claims. ............................................................. 65

E.   The Court should grant Plaintiffs' Motion for certification as to the statewide unjust enrichment classes, if it does not certify the Nationwide Unjust Enrichment Class................. 65

1.   Rule 23(a) requirements are met for each statewide sub-class. ..................................... 65

2.   Rule 23(b)'s requirements are also met for each statewide sub-class............................ 66

F.   Plaintiff Jason Wood and other class members with property damage  claims................. 66

V.    CONCLUSION ............................................................................................................. 72

Case 4:17-cv-00832-GAF   Document 81   Filed 08/29/18   Page 4 of 86

# TABLE OF AUTHORITIES

**Cases**          ***Page***

*Absure, Inc. v. Huffman*, 213 W. Va. 651 (W. Va. 2003)..............................................32

*Adelman v. Christy*, 90 F. Supp. 1034 (D. Ariz. 2000)...............................................29

*Advantage Eng'g v. Burks Pumps*, No. IP-92-442-C, 1993 U.S. Dist. LEXIS 20084
    (S.D. Ind. July 23, 1993)............................................................................... 48-49

*Allen v. Similasan Corp.*, 306 F.R.D. 635 (S.D. Cal. 2015) ........................................16

*Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936 (N.Y. 1993) ...........................................36

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .......................15, 22, 40

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..........................................17, 31

*American Towers Owners Ass'n v. CCI Mech.*, 930 P.2d 1182 (Utah 1996)...............29

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ...................13, 17

*Apache Corp. v. MDU Resources Group, Inc.*, 1999 ND 247, 603 N.W.2d 891 (N.D. 1999)......27

*Archer Daniels Midland Co. v. Eco, Inc.*, 821 F. Supp. 2d 1083 (S.D. Iowa 2011) ....................49

*Arcor v. Textron, Inc.*, 960 F.2d 710 (7th Cir. 1992)............................................48, 56

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)..............................34

*Augustin v. Jablonsky*, 819 F.Supp.2d 153 (E.D.N.Y. 2011) .................................67, 68

*Autozone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936 (W.D. Tenn. 2010) ...............41, 44

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) .......................17, 61, 62

*Backer Law Firm v. Costco Wholesale Corp.*, 321 F.R.D. 343 (W.D. Mo. 2017).......................27

*Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y.) *reconsideration denied*,
    140 F. Supp. 3d 241 (2015) ...........................................................................16

*Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508 (7th Cir. 1988)...................47, 55

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ..........................................13, 17

*Bland v. PNC Bank*, NA., 2016 U.S. Dist. LEXIS 189220 (W.D. Pa. Dec. 16, 2016).................20

*Block v. Litchy*, 428 N.W.2d 850 (Minn. Ct. App. 1988) ...........................................26

*Board of Educ. v. A, C&S, Inc.*, 546 N.E.2d 580 (Ill. 1989)........................................48

*Boudreau v. Baughman*, 368 S.E.2d 849 (N.C. 1988)..................................................36

*Bradford v. AGCO Corp.*, 187 F.R.D. 600 (W.D. Mo. 1999) ...........................14, 21, 39

*Brenner v. Oppenheimer*, 44 P.3d 364 (Kan. 2002) ....................................................36

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .........................18, 52, 57

*Bruce v. Calhoun First Nat'l Bank*, 216 S.E.2d 622 (Ga. Ct. App. 1975)....................47

*Budny v. Member Select Ins. Co.*, 895 N.W.2d 923 (Iowa Ct. App. 2017) ..................47

v

*Burlington Northern R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92
(Tex. App. 1996).............................................................................................................27

*Calumet Cheese Co., Inc. v. Chas. Pfizer & Co., Inc.*, 130 N.W.2d 290 (Wis. 1964) ............48, 55

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..................................................18

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)...........................................................24

*Champagnie v. W.E. O'Neil Constr. Co.*, 395 N.E.2d 990 (Ill. App. Ct. 1979)...........................35

*Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698 (Mich. 1995)...............................36

*Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487 (D.N.J. 1988).........................................49, 56

*Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 U.S. Dist. LEXIS 75605
(W.D. Mo. June 11, 2015)...........................................................................42, 46, 54, 57

*Cleary v. Philip Morris, Inc.*, 656 F.3d 511 (7th Cir. 2011)...................................................31, 34

*Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600
(Md. 2000) .....................................................................................................................30

*Collins Radio Co. v. Bell*, 623 P.2d 1039 (Okla. Ct. App. 1980) .................................................47

*Combustion Eng'g, Inc. v. Miller Hydro Group*, 812 F. Supp. 260 (D. Me. 1992).....................30

*Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F. Supp. 3d 661 (W.D. Tex. 2015)..............49, 56

*Cornerstone Design, Ltd. v. Elumatec USA, Inc.*, No. 2005-AP-2448, 2007 Wis. App. LEXIS
540 (Wis. Ct. App. June 13, 2007) ...........................................................................49, 56

*Crown Linen Serv. v. CT Appliance & Fireplace Distribs.*, 2009 Conn. Super. LEXIS 489
(Conn. Super. Ct. 2009) .................................................................................................28

*Cuesta v. Ford Motor Co.*, 209 P.3d 278 (Okla. 2009) ..........................................................37, 38

*Darms v. McCulloch Oil Corp.*, 720 F.2d 490 (8th Cir. 1983)....................................................61

*Davies v. Motor Radio Co.*, 236 S.W.2d 409 (Mo. Ct. App. 1951).............................................55

*DCB Const. Co., Inc. v. Central City Development Co.*, 965 P.2d 115 (Colo. 1998) ..................28

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...........................................14,15, 40

*Dellagrotta v. Dellagrotta*, 873 A.2d 101 (R.I. 2005)..........................................................31, 34

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977)...........................................................22

*Dotson v. Commonwealth*, No. 1416-02-2, 2003 Va. App. LEXIS 282
(Va. Ct. App. May 6, 2003) ............................................................................................49

*E.I. DuPont de Nemours & Co. v. Dillaha,* 659 S.W.2d 756 (Ark. 1983) ...................................47

*East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977)................................15

*Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (N.C. App. 1989)........................................27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)...................................................................13

*Elkind v. Revlon Cons. Prods. Corp.* 2017 U.S. Dist. LEXIS 24512
(E.D.N.Y. Feb. 17, 2017)................................................................................................54

Case 4:17-cv-00832-GAF   Document 81   Filed 08/29/18   Page 6 of 86

*Erie Ins. Exch. v. Hefferman*, 925 A.2d 636 (Md. 2006).................................................................36

*Exp. Dev. Canada v. T. Keefe & Son, LLC*, No. 950328945, 2016 Conn. Super. LEXIS 2815
(Conn. Super. Ct. Nov. 9, 2016) ...............................................................................48

*Fedeli v. UAP/Ga. Ag. Chem., Inc.*, 514 S.E.2d 684 (Ga. Ct. App.1999) ...............................49

*Flynn v. FCA US, LLC* 2018 U.S. Dist. LEXIS 111963 (S.D. Ill. July 5, 2018)........................54

*Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362 (Md. 2001)................................49, 55

*Friends of Children, Inc. v. Marcus*, S.W.2d 603 (Ark. 1994)........................................29

*Galoski v. Stanley Black & Decker, Inc.*, No. 1:14-cv-553, 2015 U.S. Dist. LEXIS 114663
(N.D. Ohio Aug. 28, 2015) ...............................................................................49, 56

*Garthwait v. Burgio*, 216 A.2d 189 (Conn. 1965).........................................................48

*Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613 (N.H. 2010) .................................31, 34

*Georgine v. Amchem Prods.*, 83 F.3d 610 (3rd Cir. 1996)................................................25

*Gilbert v. First Alert, Inc.*, 904 F. Supp. 714 (N.D. Ill. 1995)........................................23

*GMC v. Bryant*, 285 S.W.3d 634 (Ark. 2008) ..............................................................54

*Golden v. Den-Mat Corp.*, 276 P.3d 773 (Kan. Ct. App. 2012) ....................................47, 55

*Graham ex rel. Graham v. Wyeth Labs.*, 666 F. Supp. 1483 (D. Kan. 1987)........................49, 56

*Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986 (8th Cir. 2007) .........................26

*Gries Sports Ent's, Inc. v. Modell*, 473 N.W.2d 807 (Ohio 1984) ...................................36

*Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681 (Ill. App. 2005).......................................29

*Hague v. Allstate Ins. Co.*, 289 N.W.2d 43 (Minn. 1979) .............................................37

*Haines v. Mid-Century Ins. Co.*, 177 N.W.2d 328 (Wis. 1970) ......................................36

*Harris v. D. Scott Carruthers & Assoc.,* 270 F.R.D. 446 (D. Neb. 2010)...................................64

*Harrison v. Slidell Specialty Hosp.*, L.P., No. 2013-CA-0691, 2013 La. App.
Unpub. LEXIS 817 (La. Ct. App. Dec. 27, 2013) .........................................................49

*Hopkins v. Kan. Teachers Cmty. Credit Union*, 265 F.R.D. 483 (W.D. Mo. 2010)....................23

*Hydro Conduit Corp. v. Kemble*, 793 P.2d 855 (N.M. 1990).........................................31, 34

*Ihrke v. N. States Power Co.*, 459 F.2d 566 (8th Cir.), *vacated as moot*,
409 U.S. 815 (1972)...............................................................................................15

*In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 U.S. Dist. LEXIS 44459
(N.D. Cal. June 11, 2007) ...............................................................................20, 23

*In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150 (E.D. Pa. March 23, 2015)...............25

*In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006) .........................................14

*In re Checking Account Overdraft Litig.*), 307 F.R.D. 630 (S.D. Fla. 2015) ...............................20

*In re Copley Pharmaceutical, Inc.*, 158 F.R.D. 485 (D. Wyo. 1994)..............................................68

vii

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012)....................................................20

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, MDL No. 1687,
2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008) ................................................49, 56

*In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d 1063 (E.D. Mo. 2008) ..........................35

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)................68

*In re Hardieplank Fiber Cement Siding Litig,* No. 12-md-2359, 2018 U.S. Dist. LEXIS 90
(D. Minn. Jan., 2, 2018).......................................................................................................63

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ...........................................67

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) .............................20

*In re Motor Fuel Temp. Sales Prac. Litig.*, 292 F.R.D. 652 (D. Kan. 2013)...........................69, 71

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012) ...............................................................................51

*In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555 (E.D. Ark. 2005) ..........................................25

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920,
2008 U.S. Dist. LEXIS 109978 (D. Neb. Nov. 7, 2008) ...............................................54, 57

*In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986).................................................................25

*In re Simply Orange Juice Mktg. & Sales Practices Litig.*,
2017 U.S. Dist. LEXIS 114806 (W.D. Mo. July 24, 2017)..................................................16

*In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008)..................................................................61

*In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050 (8th Cir. 1996) .......25

*In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985)......................................................70, 71

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................67

*In re Whirlpool Corp. Front- Loading Washer Prods. Liab. Litig.* 722 F.3d 838
(6th Cir. 2013).......................................................................................................................54

*In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604
(8th Cir. 2011)...............................................................................17, 39, 41, 46, 54, 57

*Interbank Invs. v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814 (Col. Ct. App. 2003) .......29

*J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Insp. & Ins. Co.*, 341 F.3d 149
(2d Cir. 2003)........................................................................................................................46

*Jackson v. Swift-Eckrich*, 830 F. Supp. 486 (W.D. Ark. 1993) ....................................................48

*Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. 2013) .....................................................69

*Jet Printing, LLC v. Deep S. Wholesale Paper Co.*, No. M2001-02582-COA-R3-CV,
2003 Tenn. App. LEXIS 46 (Jan. 22, 2003) ..................................................................44, 47

*Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986) ........................................44, 54, 55

*Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330 (N.D. Cal. 2010)....................................20, 23

viii

*Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985)............................................................47, 55

*Klipfell v. Neill*, 494 P.2d 115 (Colo. Ct. App. 1972)...........................................47, 55

*Krueger v. Wyeth, Inc.*, 310 F.R.D. 468 (S.D. Cal. 2015) ..........................................12, 16

*Kyriazi v. Western Elec. Co.*, 647 F.2d 388 (3d Cir. 1981) ............................................68

*Labrier v. State Farm Fire & Cas. Co.*, 315 F.R.D. 503 (W.D. Mo. 2016) ................................14

*Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 14-04147-NKL,
2016 U.S. Dist. LEXIS 99980 (W.D. Mo. Aug. 1, 2016)..........................................14, 15

*Layne Atlantic Co. v. Koppers Co., Inc.*, 201 S.E.2d 609 (Va. 1974) ..........................................47

*Leach v. Wiles*, 429 S.W.2d 823 (Tenn. 1968) ......................................................42, 48

*Lee v. Carter-Reed Co.*, LLC, 4 A.3d 561 (N.J. 2010)......................................................44

*Lewis and Sims, Inc. v. Key Indus., Inc.*, 557 P.2d 1318 (Wash. Ct. App. 1976)........................47

*Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579 (Ky. 1977)..........................................35-36

*Lloyd v. GMC*, 916 A.2d 257 (Md. 2007)......................................................................51

*Malone v. Hines*, 822 S.W.2d 394 (Ark. App. 1992) ......................................................28

*Mann v. American W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978) ..........................................29

*Martin v. Behr Dayton Thermal Prods., LLC*, 896 F.3d 405 (6th Cir. 2018)..............................69

*Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50 (Tex. 1991)..............................36

*Maybank v. S.S. Kresge Co.*, 273 S.E.2d 681(N.C. 1981) ......................................................49, 50

*Microsoft v. Manning* 914 S.W.2d 602 (Tex. Ct. App. 1995) ..........................................54

*McCrary v. Elations Co.*, 13-cv-00242, 2014 U.S. Dist. LEXIS 8443
(C.D. Cal. Jan. 13, 2014) ......................................................................................16

*McCray Refrig. & Cold Storage Co. v. Woods* 58 N.W. 320 (Mich. 1894)..............................55

*Metowski v. Traid Corp.*, 28 Cal. App. 3d 332 (1972) ......................................................48, 56

*Miller v. Volkswagen of Am., Inc.*, No. E-07-047, 2008 Ohio App. LEXIS 3968
(Sept. 19, 2008)......................................................................................................44

*Mojica v. Securus Techs., Inc.*, 2017 U.S. Dist. LEXIS 15096
(E.D. Ark. Feb. 3, 2017) ......................................................................20, 23, 32, 33

*Mooney v. Allianz Life Ins. Co. of N. Am.* 2008 U.S. Dist. LEXIS 57324..............................62

*Morales v. Kraft Foods Grp., Inc.*, No. 14-cv-04387, 2015 U.S. Dist. LEXIS 177918
(C.D. Cal. June 23, 2015) ......................................................................................16

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)......................................................16

*Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99 (Mo. Ct. App. 1978)..........................36

*Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1151-52 (Cal. 1992)......................................35

*Nesby v. Country Mutual Insurance Co.*, 805 N.E.2d 241 (Ill. 2004) ..........................................29

ix

*New Holland Machine Co. v. Lewis*, 470 S.W.2d 234 (Tex. 1971)..........................................47, 55

*New Jersey Transit Corp. v. Harsco Corp.*, 497 F.3d 323 (3d Cir. 2007)..............................47, 55

*Nicholson v. Am. Safety Util. Corp.*, 488 S.E.2d 240 (N.C. 1997) ................................................51

*Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977)...........................................51

*Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618 (Ohio Ct. App. 2003) .......................47, 55

*Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910 (Tex. App. 2017)...........................................30

*Norman v. Fisher Marine, Inc.*, 672 S.W.2d 414 (Tenn. Ct. App. 1984)......................................42

*Otto v. Abbott Labs. Inc.*, No. 5:12-cv-01411, 2015 U.S. Dist. LEXIS 174945
(C.D. Cal. Sept. 29, 2015).......................................................................................................16

*Outlook Windows P'shp v. York Int'l. Corp.*, 112 F. Supp. 2d 877 (D. Neb. 2000).....................55

*Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984) .............................................................48, 56

*Panda Captial Corp. v. Kopo Int'l, Inc.*, 242 A.D. 2d 690, 662 N.Y.S. 2d 584 (1997)...............49

*Partipilo v. Hallman*, 510 N.E.2d 8 (Ill. App. Ct. 1987) .............................................................28

*Patterson v. BP Am. Prod. Co.,* 240 F.3d 456 (Colo. Ct. App. 2010) ...........................................63

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ...................................14, 15, 39, 41, 53

*Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 U.S. Dist. LEXIS 94765
(D.N.J. Dec. 28, 2007) .............................................................................................................37

*Perras v. H & R Block*, 789 F.3d 914 (8th Cir. 2015) ..................................................................17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................25

*Powell v. Am. Charter Fed. Sav. & Loan Ass'n*, 514 N.W.2d 326 (Neb. 1994) ..........................36

*Powers v. Credit Mgt. Services, Inc.*, 776 F.3d 567 (8th Cir. 2015).......................................14, 19

*Prince v. LeVan*, 486 P.2d 959 (Alaska 1971).............................................................................47

*Prudential Ins. Co. v. Eslick*, 586 F. Supp. 763 (S.D. Ohio 1984) ...............................................30

*Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120
(Cal. App. 1986) ......................................................................................................................30

*Ramthun v. Bryan Career College- Inc.*, 93 F. Supp. 3d 1011 (W.D. Ark. 2015) ......................61

*Reidling v. Holcomb*, 483 S.E.2d 624 (Ga.App. 1997)..................................................................34

*Samuel-Bassett v. Kia Motors of Am., Inc.*, 34 A.3d 1 (Pa. 2011)...............................................49

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992
(8th Cir. 2016)..................................................................................14, 15, 22, 39, 59

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004)......................................20

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, 2006 U.S. Dist. LEXIS 18630
(N.D. Ill. April 12, 2006) .........................................................................................................29

*Sellars v. CRST Expedited, Inc.*, 321 F.R.D. 578 (N.D. Iowa 2017)............................................69

x

*ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302
(Minn. 1996) ....................................................................................................28, 30

*Sisemore v. Dolgen Corp.*, 212 F. Supp. 3d 1106 (N.D. Okla. 2016) ..........................49

*Sloan v. VM, LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018) .....................................49, 56

*Smith v. Burdine's, Inc.*, 198 So. 223 (Fla. 1940)................................................47, 55

*Smith v. Pfizer, Inc.*, 688 F. Supp. 2d 735 (M.D. Tenn. 2010) ...............................42, 49

*Smith v. Whitener*, 856 S.W.2d 328 (Ark. App. 1993) ..................................................27

*Southeastern Adhesives Co. v. Funder Am., Inc.*, 366 S.E.2d 505 (N.C. Ct. App. 1988) .......47, 55

*Sperry v. Crompton Corp.*, 26 A.D.3d 488, 810 N.Y.S.2d 498
(N.Y.A.D. 2 Dept. 2006)................................................................................27

*Spinella v. Atlantic Tug & Equip. Co., Inc.*, 127 N.Y.S.2d 641,
(App. Div. 1954)......................................................................................47, 55

*Starko, Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252 (N.M. Ct. App. 2011) ..................30

*State Farm Mut. Auto Ins. Co. v. Estate of Simmons*, 417 A.2d 488 (N.J. 1980)........................37

*State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006) ........................................36

*Steigerwald v. BHH, LLC*, No. 1:15 CV 741, 2016 U.S. Dist. LEXIS 21116
(N.D. Ohio Feb. 22, 2016) ............................................................................16

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ......................................20

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012)............................43, 51, 54

*Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340
(D. Mass. 1982)..........................................................................................27

*TBK Partners v. Chomeau*, 104 F.R.D 127 (E.D. Mo. 1985).........................................21

*Torrence v. Durisol, Inc.*, 20 Conn. Supp. 62 (Conn. Super. Ct. 1956) .......................47

*True v. ConAgra Foods, Inc.*, 2011 U.S. Dist. LEXIS 6770 (W.D. Mo. Jan. 4, 2011) ................35

*Trustmark Ins. Co. v. Bank One, Arizona, N.A.*, 48 P.3d 485 (Ariz. App. Div. 1 2002).........29, 30

*US v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir. 1999)....................................29

*U.S. Automatic Sprinkler Co. v. Reliable Automatic Sprinkler Co.*, 719 F. Supp. 2d 1020
(S.D. Ind. 2000) ..........................................................................................47

*Vichi v. Koninklijke Philips Elecs. N.V.*, Civ. Action No. 2578-VCP,
2009 Del. Ch. LEXIS 209 (Del. Ch. Dec. 1, 2009) ....................................26

*Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 74846
(E.D. Pa. June 10, 2015) ..............................................................................25

*Visual Comms., Inc. v. Konica Minolta Bus. Sol's USA, Inc.*, 611 F. Supp. 2d 465
(E.D. Pa. 2009)............................................................................................47

*Wallman v. Kelley*, 976 P.2d 330 (Colo. Ct. App. 1998).......................................49, 56

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................................................14, 22

*Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170 (D. Mass. 2010) ..................................37, 38

*Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641 (8th Cir. 2015) ............................................37

*Westmont Tractor Co. v. Viking Exploration, Inc.*, 543 F. Supp. 1314 (D. Mont. 1982).............29

*White v. White*, 2017 W. Va. LEXIS 636 (W.Va. September 1, 2017) .........................................33

*Whitney v. Guys, Inc.*, 700 F.3d 1118 (8th Cir. 2012) ..................................................................37

*Winter v. Novartis Pharm's Corp.*, 739 F.3d 405 (8th Cir. 2014)...........................................35, 36

*Woods Bros. Homes, Inc. v. Walker Adjustment Bur.*, 601 P.2d 1369 (Colo 1979).....................35

*Yarger v. ING Bank, Fsb*, 285 F.R.D. 308 (Del. 2012) ................................................................25

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .........................................18

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

# I.    INTRODUCTION

Dollar General's DG Auto store-brand motor oil was marketed and labeled identically in all locations to look like a less expensive version of the name-brand motor oils beside which Defendants placed their store-brand bottles. However, Dollar General's DG Auto store-brand motor oil was not the same or similar quality as that of the name-brand motor oils. Rather, the DG Auto motor oil was obsolete and not suitable for modern automobiles. Using deceptive, unfair, and unlawful marketing and sales practices, between late 2010 and early 2017, Dollar General sold millions of bottles of its DG Auto motor oil to Plaintiffs and class members, who were not aware that the DG Auto motor oil was unsuitable for nearly every automobile on the road. Dollar General grossed over ███████ due to these predatory sales.

Plaintiffs are 20 people residing in 17 different states who bring this action as individuals and representatives of two nationwide classes and 17 state-specific sub-classes of people who similarly unknowingly purchased Dollar General's obsolete motor oil. Plaintiffs seek relief for Dollar General's alleged unjust enrichment, breach of implied warranties of merchantability and fitness for a particular purpose, and violations of various state consumer protection statutes. As set forth herein, Plaintiffs' claims are based on Dollar General's uniform deceptive and unlawful conduct occurring throughout the class periods across the country in each of Defendants' stores. Certification of Plaintiffs' classes is appropriate. The Court should certify Plaintiffs' proposed Nationwide Unjust Enrichment Class and Nationwide Implied Warranties Class. If the Court declines to certify a nationwide class for these claims, the Court should certify a multi-state class or state sub-classes. At a minimum the Court should certify state sub-classes in the 17 states in which Plaintiffs reside for each of these claims. Additionally, the Court should certify state sub-classes for the 17 states in which Plaintiffs reside with regard to their state consumer protection

1

statutory claims.

## II. FACTUAL BACKGROUND SUPPORTING CLASS CERTIFICATION

Following the economic recession of 2007, Dollar General's business expanded as more consumers began shopping at dollar stores. (Martin Depo. at 125:2-6, Ex. 1; Lee Depo. at 17:12-18:16, Ex. 2). ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██ The DG store-brand products were meant to be comparable to name-brand products, only cheaper. (Wheeler Depo. at 93:13-14 ("private brands are designed to offer a lower price alternative"), Ex. 4; SCH-01985 at p.3 ██████████████████████████████

██████████████████████████████████████████████ This included the introduction of a store-brand motor oil under the DG Auto label.

At this point in time, Dollar General was already selling obsolete motor oil in its stores but under the Unilab label.[1] (Dollar General Depo. (3/6/18) at 194:18-195:12, Ex. 3; ████████

████████████████ Dollar General sold Unilab in two grades—10W-40 and SAE 30. As stated on the front of the label, the Unilab 10W-40 was "SF quality for model years 1988 and earlier." (JDS-0323-0324, Ex. 7; JDS-0326, Ex. 8). The Unilab SAE 30 was API specification SA. (JDS-0325, Ex. 9). "SA" grade motor oil is not suitable for use in most gasoline engines manufactured after 1930. Use of SA and SF-rated oils can reasonably be expected to damage post-1988 internal combustion engines used in automobiles by causing a decreased life, reduced fuel mileage, excessive and accelerated wear, corrosion, and even catastrophic failure. (Jackson Report at 23-24, Ex. 10; DG04012463, Ex. 11; API-002380 ("These obsolete oils can cause damage to the majority of cars on the road."), Ex. 12; ILMA-002134, Ex. 13). And, Dollar

---

[1] The definition of obsolete motor oil is endorsed by the American Petroleum Institute (API) and the Society for Automotive Engineers (SAE).

2

General produced a number of complaints from its customers describing similar damage to their vehicles following the use of the obsolete motor oil. █████████████████████████

█████

As part of its rebranding process, and to maximize its profit margins, Dollar General converted the Unilab 10W-40 and Unilab SAE 30 to its DG Auto brand, continuing to sell the same obsolete SF and SA specification motor oil, rather than changing to an up-to-date product. (Dollar General Depo. (3/6/18) at 194:23-195:18 & 353: 8-22, Ex. 3; ███████████████

███████████████ With the conversion of the Unilab product to the DG Auto label, the motor oil inside the bottles stayed the same, as did the vendors and the price, but Dollar General changed the label to conform with its new internal brand guidelines in an effort to have uniformity across its store-brand products. (Def. Resp. to 2nd Rogs., No. 6, Ex. 18; Dollar General Depo. (3/5/18) at 151: 1-19, Ex. 19). When it changed the label, Dollar General removed the explicit front label warning on its 10W-40 motor oil bottle that stated it was only intended for car model years 1988 and earlier. The removal of this front label warning was one way in which Dollar General misled consumers about the obsolete nature of the motor oil.

Dollar General began selling the re-branded, still obsolete, DG Auto motor oil in September 2010, offering the same two grades previously offered under the Unilab label—SAE 10W-40, not suitable for use in most gasoline powered automotive engines built after 1988, and SAE 30, not suitable for use in most gasoline powered automotive engines built after 1930. (Def. Resp. to 1st Rogs., No. 2, Ex. 20; DG04006127, Ex. 21; DG04012853 at p.3, Ex. 22). In 2015, Dollar General expanded its obsolete motor oils to include 10W-30 (SF), also not suitable for use in most gasoline powered automotive engines built after 1988. (Id.; JDS-0379, Ex. 23). Dollar General sold these obsolete oils despite numerous reports of confusion from customers,

employees, and vendors, as discussed *infra.*

Dollar General acknowledges that all of its stores sold the same DG Auto motor oils during the same general time frame:

> All stores sold the DG 10W-40 (SF) and DG SAE 30 (SA) beginning in approximately late 2010. DG 10W-30 (SF) began to be sold in all stores in approximately March 2015. Subsequent to those time frames, all three of these products were sold in all stores until December 31, 2015, when all three products were removed from shelves in California stores. These products continue to be sold in some stores outside of California. Few units remain in these stores for sale, and Dollar General does not intend to purchase additional units of these products to be sold in stores.

(Def. Resp. to 1st Rogs., No. 2, Ex. 20; █████████████████████████████████

██ Dollar General admits that its motor oil offerings were the same in each of its stores. (Def. Resp. to 1st Rogs., No. 8, Ex. 20). And, in each store, Dollar General placed its obsolete DG Auto motor oil on its store shelves beside name-brand motor oil products such as Castrol, Pennzoil and Peak motor oil.[2] (*E.g.,* DG01000438, Ex. 24; ████████████████████████ Miller Depo. at 88:23-89:4, Ex. 26).

Dollar General purchased its obsolete DG Auto motor oil from only two vendors (J.D. Street and Martin), but the label on the products was substantially the same regardless of the vendor.[3] (Dollar General Depo. (3/6/18) at 261:5-262:4, Ex. 3). ███████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ The goal was to position the DG Auto brand products, including its obsolete DG Auto motor oil, to suggest they

---

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████

The only marketing of the DG Auto motor oil was via print advertising, *e.g.*, its circular distributed nationwide through newspapers, which depicted photos of the front of the products. (Dollar General Depo. (3/6/18) at 358:3-10, Ex. 3; Def. Resp. to 1st Rogs., No. 19, Ex. 20; DG06000091, Ex. 28; DG01014237, Ex. 29). Thus, there was no marketing of the product independent of the label.

4

had the same or similar qualities as name-brand products, only cheaper. ████████████

██.[4] Significant attention was paid to the appearance of the front label of the DG-brand products:



Although Dollar General's goal was for its obsolete DG Auto motor oil to appear to be the same or similar quality as the name-brand motor oil products, the DG Auto motor oil was not. Throughout the relevant period, the front label of all three grades of obsolete DG Auto motor oil contained the DG Auto brand, the checkered auto racing flag, the specified viscosity, along with the words "Motor Oil." ████████████████████████████

██████ DG04006127 (10W-40 label from 2012), Ex. 21; JDS-0592 (10W-30 label from 2012), Ex. 38). An accurate front label would have identified the product as "obsolete motor oil." In addition, the 10W-40 and the 10W-30 labels both stated that the obsolete DG Auto motor oil

---

[4] *See also* Dollar General's 2015 Annual Report at 81 ("We offer quality nationally advertised brands at these everyday low prices in addition to offering our own comparable quality private brands at value prices."), Ex. 31. Dollar General understood that, all other things being equal, a significant number of shoppers will buy the cheapest alternative.

[5] Although the price of the obsolete DG Auto motor oil is set by Dollar General's headquarters and is determined nationally by benchmarking the price of competitors, namely Wal-Mart (Def. Resp. to 1st Rogs., No. 12, Ex. 20; Wheeler Depo. at 60:17-61:9, Ex. 4), Dollar General uses pricing zones based on the competitive environment of a store. (*Id.*). Accordingly the price of DG Auto motor oil may differ, depending on the pricing zone. ████████████████████████

██████████████████████████████████████

"lubricates and protects your engine." (DG04006127, Ex. 21; JDS-0592, Ex. 38). In accordance

with Brand & Packaging Guidelines, 

However, on the back label,

Dollar General provided its suitability language indicating the limited use of

the obsolete DG Auto motor oil.[6]

DG04012853 at p.4 (SAE 30 label from 2012), Ex. 22;

DG04006127 (10W-40 label from 2012), Ex. 21; JDS-0592 (10W-30 label from 2012),

Ex. 38; *see also* Kalsher Expert Report, Ex. 39; ILMA-003470, Ex. 40). It did not provide a

"warning" but only a caution embedded in fairly ambiguous language.

By marketing its obsolete DG Auto motor oils as less expensive alternatives to name-

brand products while obscuring the true quality of the DG products in fine print and misleading

language on the back, where consumers are unlikely to see it, Dollar General was able to sell its

obsolete motor oil products to millions of unsuspecting consumers.[7] Plaintiffs' expert Dr. Carol

---

[6] As can be seen from the cited labels, the language on the back label of the DG Auto obsolete motor oil products was revised periodically over the time period in which Dollar General sold the product. Although the changes were not significant, the suitability language became more specific over time; however, Plaintiffs believe that none of the language used by Dollar General sufficiently disclosed the quality of and risks posed by the obsolete DG Auto motor oil. Regardless, since the labels on each specific grade of obsolete DG Auto motor oil was the same for all consumers throughout the relevant time, the sufficiency of Dollar General's representations is a common issue applicable to Plaintiffs and class members.

[7] At several points during discovery, Dollar General has taken the position that it never intended its DG Auto motor oil to be comparable to current specification, name-brand products, but rather, it chose to use its limited space to sell a product with limited use to a niche market of consumers with pre-1988 vehicles. The witness testimony is inconsistent among Dollar General witnesses, and no documents have been identified to support the contention that Dollar General was marketing and selling its obsolete motor oil for its actual, intended use or that such a market actually existed. Indeed, Dollar General's motor oil buyer did not know who bought its motor oil

6

Scott conducted a consumer survey to determine whether or not reasonable consumers would be misled by Dollar General's marketing and labeling of its obsolete DG Auto motor oil products and concluded that consumers shopping at Dollar General are likely to be misled as to the suitability of obsolete DG Auto motor oils for use in modern automobiles. (Scott Report at 3, Ex. 41). Dr. Scott concluded that: (1) it is highly likely that consumers who only view the front label will be misled into believing that the obsolete DG Auto motor oil could be used in modern automobiles; (2) most consumers evaluate the suitability of motor oil based on viscosity only and do not believe further information is needed; (3) very few consumers are likely to read the back label of motor oil and thus, most consumers are not likely to see any limitations or disclaimers regarding suitability; and (4) even consumers who do read the back label are likely to be misled and nevertheless believe that the obsolete DG Auto motor oil is suitable for modern automobiles. (*Id.* at 3-4 (summary of opinions)). While Dollar General seeks a return to the "buyer beware" era and to put the onus on the consumer to read and do research regarding motor oil before purchasing, Dr. Scott's survey supports Plaintiffs' contention that most consumers do not expect to find motor oil that should not be used in cars made within the last 30 years at a store like Dollar General, and thus, consumers are not aware that this is something they need to look out for, particularly when shopping for everyday products at everyday low prices.[8] (*Id.*). Indeed, Dollar General's own research indicates that the average time its customers spend in their store

---

or why. (Mast Depo. at 229:20-230:11, Ex. 6). Thus, this is a disputed factual issue, but one that is common to Plaintiffs and class members.

[8] Plaintiffs deposed a number of Dollar General employees during discovery and the majority of them were not aware that obsolete motor oil existed or what API specifications (SA, SF, SN) were or meant prior to this litigation or prior to the time they worked with the DG Auto department. (Ensley Depo. at 47:4-49:9, Ex. 42; Lee Depo. at 28:9-29:3, 38:24-39:13, Ex. 2; Martin Depo. at 10:1-17, Ex. 1; Miller Depo. at 62:1-10, Ex. 26; Rosenstein Depo. at 12:6-21, 114:10-12, Ex. 43; Stewart Depo. at 26:5-27:7, Ex. 44; Vasquez Depo. at 20:24-21:5, Ex. 45; Wheeler Depo. at 149:1-21, Ex. 4).

per trip is 10 minutes, in that time they purchase approximately 5-6 items. (Martin Depo. at 17:8-15, Ex. 1). Dollar General consumers are not spending time reading labels, and Dollar General knows this.

Dollar General's business model is to provide its customers with basic everyday needs at everyday low prices in conveniently located, small stores. (Dollar General 2015 Annual Report at 80-81, Ex. 31; ██████████████████████████ Indeed, Dollar General admits that its target customers are "consumers who seek everyday products at low prices in convenient neighborhood locations" and they "do not differ substantially among stores." (Def. Resp. to 1st Rogs., No. 18, Ex. 20). Because of the limited space, Dollar General must determine, based on profitability, which products to offer in the allocated space. Dollar General's automotive buyer Dave Mast testified that he looks at the multitude of products and must determine what is best for that space and how to make the space most productive. (Mast Depo. at 14:2-10, Ex. 6).[9] He wants to make sure he puts products on store shelves that customers will buy. (Id.). Three of the motor oil products Dollar General chose to put on store shelves were its obsolete DG Auto motor oil products that are not suitable for use in most modern-day automobiles—hardly everyday products. See (Scott Report at 4-5, Ex. 41).

Dollar General has no research evidencing a demand or need for obsolete motor oil, nor any research or information regarding the number of pre-1930 or pre-1988 vehicles on the road, how many owners of such vehicles shop at Dollar General, or even the age of its customers' vehicles.[10] ████████████████████████████████████ Martin Depo. at 233:23-234:21, Ex. 1; Stewart Depo. at 53-7-54:2, Ex. 44; Def. Resp. to 1st Rogs., No. 5, Ex.

---

[9] See also Stewart Depo. at 35: 3-17, Ex. 44.

[10] Dollar General also viewed the competition for its DG Auto obsolete motor oil as current, SN-rated motor oil products, indicating its knowledge of no stand-alone market for obsolete motor oil. ████████████████████████

20). Dollar General did, however, have research showing that █████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████ In addition, Dollar General's vendors and suppliers provided the company with marketing research showing the current trend: █████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████

Further, Dollar General's vendors and suppliers informed Dollar General about the different types of motor oils and warned that the motor oil it was selling was obsolete and could damage modern-day automobiles. ███████████████████████████████████ ████████████████████████████████████████████████████ DG04012463 (forwarding article wherein oil executive describes impact of obsolete oil as more like a cancer than a heart attack), Ex. 11; ████████████████████████████████████ ███. Many of its vendors urged Dollar General to upgrade to a current specification motor oil, noting that no one else sold obsolete motor oil. ██████████████████████████████ ██████████████████████████ Ex. 56; DG03071409, Ex. 57; DG01000437, Ex. 58). This suggestion was consistent with information disseminated by lubricant industry leaders and regulators.[11] (API-002380 ("These obsolete oils can cause damage to the majority of cars on the road."), Ex. 12; ILMA-002134 (discussing proposal to eliminate obsolete motor oils from retail market to protect consumers from misrepresented motor oils that can damage today's vehicle

---

[11] The Independent Lubricant Manufacturers Association (ILMA), following California's lead, proposed amendments to the NIST Handbook 130 making it illegal to sell obsolete motor oils at retail to the public and changing labeling requirements to identify on the front label those products were not intended for retail sale for use in on-highway vehicles. (ILMA-002268, Ex. 59; ILMA-002938, Ex. 60).

engines), Ex. 13).

Nevertheless, Dollar General knowingly sold obsolete motor oil to its customers as if it were an everyday motor oil.[12] (*E.g.*, DG04011074, Ex. 62). Dollar General knew this was confusing to its customers, ███████████████████████████████████████████

███████



████████████████████████████████ Good Morning America story (2/12/16), Ex. 65 ("The same clerk told us she doesn't know a lot about cars, but thinks the product is like the brand-name oils, just cheaper.")).

Dollar General's decision to sell obsolete motor oil was made at headquarters, and Dollar General admits that its decision to continue selling obsolete motor oil under the DG Auto label was approved centrally on an annual basis "based on cost and performance." (Def. Resp. to 1st Rogs., No. 5, Ex. 20). Dollar General talked internally about switching to current specification motor oil for several years but decided against it █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[12] After the initiation of this lawsuit, Dollar General switched to non-obsolete motor oil. ████████████████████████████████████████████████████████

████████████████████████████████████████████



Reinhardt Depo. at 162:9-13, Ex. 69; Wheeler Depo. at 161:20-162:4, Ex. 4).  Only after Plaintiffs filed this class action lawsuit, after California banned the sale of obsolete motor oil, and ████████████ ████████ did Dollar General make the decision to switch from its obsolete SA and SF products to a current SN motor oil. (DG04021499, Ex. 70; Def. Resp. to 1st Rogs., No. 3, Ex. 20).[13]

Before the switch to a current motor oil, between late 2010 and early 2017, Dollar General sold ████████ quarts of its obsolete DG Auto motor oil, ████████████████████

██ Dollar General has no information indicating that its customers purchased its obsolete DG Auto motor oil in such large quantities for any reason other than that they were being deceived by Dollar General's marketing and sales practices.

---

[13] Even after making the decision to switch to SN motor oil, Dollar General continued to sell its obsolete DG Auto motor oil until it had depleted its supply.

Dollar General profited at Plaintiffs' and class members' expense. Indeed, Dollar General's decision to knowingly market and sale deceptively labeled, obsolete motor oil to increase its profit margin negatively impacted unknowing consumers who purchased it. Dollar General produced a number of complaints from its customers describing damage to their vehicles following the use of the obsolete motor oil, including diminished vehicle life, less efficient fuel mileage, excessive and accelerated wear, corrosion, and even catastrophic failure. █████████

████████████████████

Plaintiffs respectfully ask the Court to certify their proposed classes, each of which is based on Dollar General's deceptive and unlawful conduct that caused harm to Plaintiffs and class members. For ease of reference, Plaintiffs have created a chart identifying each class sought to be certified, along with the named Plaintiffs and claims associated with each, which is attached as Exhibit 80. Certification is appropriate and the most efficient manner of proceeding in this matter because, as set forth above, the liability issues associated with Plaintiffs' claims are based on Dollar General's common course of conduct and Plaintiffs will use common evidence[14] to prove their claims.

## III. LEGAL STANDARD FOR CLASS CERTIFICATION

A class action is properly certified when plaintiffs demonstrate that the proposed classes and sub-classes satisfy Rule 23(a)'s four requirements of numerosity, commonality, typicality, and adequacy along with at least one subsection of Rule 23(b). In evaluating whether a motion for certification should be granted, a court must accept the plaintiffs' substantive allegations as true and not assess the likelihood of success on the merits. *See Eisen v. Carlisle & Jacquelin,* 417

---

[14] *E.g.,* Krueger Amended Report (calculating damages for each proposed class based on common evidence from Dollar General's records), Ex. 81; Jackson Report at ¶¶ 23-24 (discussing how Dollar General's SA/SF-rated motor oil can reasonably be expected to damage modern-day vehicles, like those used by Plaintiffs and class members), Ex. 10.

U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Blades v. Monsanto Co.,* 400 F.3d 562, 566-67 (8th Cir. 2005) (explaining that at the class certification phase, a court's "limited preliminary inquiry, looking behind the pleadings" must "look only so far as to determine whether, given the factual setting of the case, if the plaintiffs['] general allegations are true, common evidence could suffice to make out a prima facie case for the class." (citing *Eisen,* 417 U.S. at 177-78)). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

> **A.** **Rule 23(a) requires a showing of numerosity, commonality, typicality, and adequacy.**

To certify a class, a court must determine that the proposed classes and sub-classes meet each of Rule 23(a)'s requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Numerosity. Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable. "In assessing whether the numerosity requirement has been met, courts examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims." *Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 14-04147-NKL, 2016 U.S. Dist.

13

LEXIS 99980, at *16 (W.D. Mo. Aug. 1, 2016) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). This Court, for example, has found a class of twenty to sixty-five members to be sufficiently numerous under Rule 23. *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999).

Commonality. Rule 23(a)(2) requires plaintiffs to show there are questions of law or fact common to the classes. *Powers v. Credit Mgt. Services, Inc.*, 776 F.3d 567, 571 (8th Cir. 2015). "'What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original)). "The 'common contention' in Rule 23(a)(2) 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Dukes*, 564 U.S. at 338). Further, Rule 23(a)(2) does not require that "every question of law or fact be common to every member of the class"—a single significant common issue is enough. *Paxton*, 688 F.2d at 561; *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 209 (W.D. Mo. 2006) ("commonality requires the existence of only one common issue of law or fact").

Typicality. Rule 23(a)(3) requires the claims or defenses of the representative parties to be typical of the claims or defenses of the class or sub-class. Typicality is satisfied when each class member's claim arises from the same course of conduct and each class member makes similar legal arguments to prove the defendants' liability. Fed. R. Civ. P. 23(a)(3); *Labrier v. State Farm Fire & Cas. Co.*, 315 F.R.D. 503, 514 (W.D. Mo. 2016); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995). Differing factual situations of class members do not

14

defeat typicality when the claims arise from the same event or course of conduct. *DeBoer*, 64 F.3d at 1174-75 ("When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment") (citations omitted); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (same). Thus, a class representative need not establish his or her experience was exactly the same as every class member in order to establish her or her claims are typical of other members' claims. Like every other class member, each Plaintiff bought the same obsolete motor oil.

Adequacy. Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of class members. Adequacy of representation entails a two-pronged inquiry: whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton,* 688 F.2d at 562-63. With respect to the first prong, the named plaintiffs must be a member of the class or sub-class they seek to represent, and hence, must possess the same interest and have suffered the same injury as the class members. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Ascertainability. In addition to the foregoing express requirements, Rule 23 includes an implicit requirement that a class "must be adequately defined and clearly ascertainable." *Sandusky*, 821 F.3d at 996 (quoting *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 n.3 (8th Cir.), *vacated as moot*, 409 U.S. 815, (1972). The Eighth Circuit "has not addressed ascertainability as a separate, preliminary requirement," *Id*. Notably, *Sandusky* did *not* "apply any heightened ascertainability standard" of other circuits such as whether it is "administratively feasible to identify members of the proposed class[.]" *Lafollette*, 2016 U.S. Dist. LEXIS 99980 at *14-15 (discussing *Sandusky*, 821 F.3d 992).

15

To satisfy this standard, a court in the Western District of Missouri recently recognized, "where the object of the suit is a low-value consumer product, lack of proofs of purchase will necessitate the use of self-identification of class members through affidavits." *In re Simply Orange Juice Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 114806, *15 (W.D. Mo. July 24, 2017) (granting class certification); *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) ("The heightened ascertainability requirement… [has] the effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase.").[15]

### B.  Rule 23(b)(3) requires a showing of predominance and superiority.

In addition to meeting the requirements of Rule 23(a), a case must also meet the requirements of one of the subdivisions of Rule 23(b) in order to proceed as a class action. Here, Plaintiffs seek certification of a Rule 23(b)(3) class because they are pursuing monetary relief to compensate the class and sub-class members for purchasing Dollar General's obsolete motor oil that they otherwise would not have purchased had they known that the oil is not suitable for modern automotive use. Rule 23(b)(3) applies when "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Courts commonly refer to these two

---

[15] *See also Steigerwald v. BHH, LLC*, No. 1:15 CV 741, 2016 U.S. Dist. LEXIS 21116, at *4-5 (N.D. Ohio Feb. 22, 2016); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 66-67 (E.D.N.Y.) *reconsideration denied*, 140 F. Supp. 3d 241 (2015); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 476 (S.D. Cal. 2015); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 643 (S.D. Cal. 2015); *Otto v. Abbott Labs. Inc.*, No. 5:12-cv-01411, 2015 U.S. Dist. LEXIS 174945, at *2-3 (C.D. Cal. Sept. 29, 2015); *Morales v. Kraft Foods Grp.*, Inc., No. 14-cv-04387, 2015 U.S. Dist. LEXIS 177918, at *12 (C.D. Cal. June 23, 2015); *McCrary v. Elations Co.*, 13-cv-00242, 2014 U.S. Dist. LEXIS 8443, at *7 (C.D. Cal. Jan. 13, 2014).

requirements as "predominance" and "superiority."

Predominance. To meet the predominance requirement, plaintiffs must show that questions of law or fact common to class members predominate over questions affecting only individuals. *See Perras v. H & R Block*, 789 F.3d 914, 916 (8th Cir. 2015) (citing Fed. R. Civ. P. 23(b)(3)). The predominance requirement "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades*, 400 F.3d at 566 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "When deciding whether common issues predominate[,] the court should conduct a 'rigorous analysis' including an "examination of what the parties would be required to prove at trial.'" *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011) (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). The Eighth Circuit has held that:

> [A] court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining whether, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class.

*Id.* at 618; *see also Blades*, 400 F.3d at 566 ("The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual."). If the class members can make a prima facie showing of their claims with the same evidence, then the question of law is common." *Perras,* 789 F.3d at 916 (citing *Avritt*, 615 F.3d at 1089). "If, on the other hand, the evidence will vary from member to member, then the question is an individual one." *Id.*

While the focus of Rule 23(b)(3) is on the predominance of common *questions*, the predominance requirement does not demand proof that common questions be answered in Plaintiffs' favor. *Amgen Inc.,* 568 U.S. at 459 (movant must show "that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the

17

class") (emphasis in original).

Superiority. Rule 23(b)(3) further requires a finding "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining superiority, courts must consider the four factors of Rule 23(b)(3). *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir. 2001).

The first factor requires an analysis of "the class members' interests in individually controlling the prosecution or defense of separate actions[.]" Fed. R. Civ. P. 23(b)(3)(A). "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Id.* at 1190. The second factor of the superiority analysis requires a court to determine "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]" Fed. R. Civ. P. 23(b)(3)(B). And the third factor examines "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(D). Finally, the fourth factor of the superiority analysis, manageability, "specifically mandates that courts consider 'the likely difficulties in managing a class action.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (*quoting* Fed. R. Civ. P. 23(b)(3)(D)). A court, however, should not refuse to certify a class on the basis of manageability alone "given the variety of procedural tools courts can use to manage the administrative burdens of class litigation." *Id.* With respect to the size of the class, that is no reason to deny class certification on manageability grounds because "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

## IV. LEGAL ARGUMENT

18

Plaintiffs' propose a Nationwide Unjust Enrichment Class, Nationwide Implied Warranties Class, and, in the alternative, a Multi-State Implied Warranties Class. Also, in the alternative Plaintiffs propose state-specific subclasses. Plaintiffs and each class seek relief for Dollar General's alleged unjust enrichment, breach of implied warranties of merchantability and fitness for a particular purpose, and violations of various state statutes. Each one of Plaintiffs' proposed classes and sub-classes satisfies Rule 23(a)'s four requirements as well as Rule 23(b)(3)'s requirements making certification proper.

### A. The Court should certify Plaintiffs' Nationwide Unjust Enrichment Class.

Plaintiffs' First Claim for Relief in their Consolidated Amended Complaint ("CAC") (Doc. # 44) alleges that Defendants were unjustly enriched and demands restitution of all monies, profits, and gains which they have obtained thereby. CAC, ¶¶ 120-134. Plaintiffs' CAC brings such claims on behalf of a Nationwide Unjust Enrichment Class, defined as follows:

> All persons in the United States who, at any time since May 2013, purchased DG Auto SAE 10W-30 motor oil and/or DG Auto SAE 10W-40 motor oil for use in vehicles manufactured after 1988 and/or DG Auto SAE 30 motor oil for use in vehicles manufactured after 1930.[16]

The basic principle underlying a claim of unjust enrichment is that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement (First) of Restitution* § 1 (1937).[17] "Although there are numerous permutations of the elements of the cause of action in the various states, there are few real differences." *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007), *vacated on other grounds*, 328 Fed. Appx. 121 (3d Cir. 2009). The basic elements of the claim are that "the defendant received a

---

[16] Plaintiffs slightly modified their class definition from that presented in the CAC.

[17] The vast majority of, if not all, state courts recognize the *Restatement* as an authority. *See* Appendix A to Plaintiffs' Brief (cataloging cases citing the *Restatement*).

19

benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff." *Id*.

As courts have observed, claims of unjust enrichment are often especially well-suited for class treatment because they are established largely based on the conduct of the defendant. *See, e.g.*, *Martinez v. Wells Fargo Bank, N.A.* (*In re Checking Account Overdraft Litig.*), 307 F.R.D. 630, 647 (S.D. Fla. 2015) ("the claim is well-suited for multi-state class treatment by virtue of its uniform availability and focus on the defendant's ill-gotten gain."); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 613 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment."). A number of courts throughout the country have certified nationwide and other multi-state unjust enrichment classes. *See, e.g.*, *Mojica v. Securus Techs., Inc.*, 2017 U.S. Dist. LEXIS 15096, *26, 2017 WL 470910 (E.D. Ark. Feb. 3, 2017); *Bland v. PNC Bank*, NA., 2016 U.S. Dist. LEXIS 189220, *60 (W.D. Pa. Dec. 16, 2016)); *In re Checking Account Overdraft Litig.*, 307 F.R.D. at 647; *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 219 (E.D. Pa. 2012) (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20-21 (D. Mass. 2010), *reversed on other grounds by* 790 F.3d 36, 36 (1st Cir. 2015); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 U.S. Dist. LEXIS 44459, *26 (N.D. Cal. June 11, 2007); *Schumacher*, 221 F.R.D. at 613; *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998). In granting certification, the courts in each of these cases determined that the differences among state laws of unjust enrichment did not prelude class treatment. In addition to

the essential similarity of unjust enrichment laws, the present case is especially ripe for class treatment because Dollar General engaged in uniform conduct with respect to each putative class member. For these reasons, the Nationwide Unjust Enrichment Class satisfies all the necessary requirements under Rule 23 and therefore should be certified.

### 1. Rule 23(a) requirements are met.

Plaintiffs satisfy the basic requirements of Rule 23(a)(2). First, as explained above and defined in the Complaint, the class is clearly defined and ascertainable. It includes any person in the U.S. that purchased, from May 2013 to the present, the relevant obsolete DG Auto motor oil for use in a vehicle manufactured after 1988 or 1930, respectively.

Moreover, the class is sufficiently numerous because it includes well over the twenty to sixty-five class members typically required to demonstrate numerosity. *See Bradford*, 187 F.R.D. at 604. While the exact number of individuals meeting the proposed class definition is unknown, records indicate Dollar General sold over █████████ of the obsolete motor oil in question during the class period. (DG01016049, Ex. 71). Thus, even accounting for individuals who purchased multiple units of the oil as well as those who purchased the obsolete oil for use in vehicles that were not their own, any reasonable estimate of the size of this nationwide class would be sufficiently numerous.

The Nationwide Unjust Enrichment Class also has commonality. Though not "every question" raised by the class may be common to the class, there are "one or more significant questions of law or fact [that] are common to the class." *See TBK Partners v. Chomeau*, 104 F.R.D 127, 130 (E.D. Mo. 1985). Plaintiffs' unjust enrichment claims raise a number of questions of law and fact common to the class, including: (1) whether Defendants misrepresented the safety and suitability of their DG Auto motor oil; (2) the amount of Defendants' DG Auto

motor oil they sold relative to the limited number of automobiles for which these motor oils were appropriate; (3) the cost to Defendants to manufacture, distribute, market, and sell the DG-branded motor oil compared to the revenue they received from the sales; (4) what profits Defendants earned on sales of their DG Auto motor oil. Importantly, the core issue of this class' claims is whether Dollar General was unjustly enriched by profiting off of sales of, what Dollar General knew to be, obsolete motor oil to unknowing consumers who expected to purchase "everyday products" from Dollar General. This core issue is "'of such a nature that it is capable of classwide resolution'" which alone allows Plaintiffs' Nationwide Unjust Enrichment Class to demonstrate commonality. *See Sandusky Wellness Ctr., LLC*, 821 F.3d at 998 (quoting *Dukes*, 564 U.S. at 338).

Plaintiffs satisfy the "fairly easily met" requirement of typicality because class members "have the same or similar grievances as the [named] plaintiff[s]," *see Alpern*, 84 F.3d at 1540 (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)), and their unjust enrichment claims stem from the same or similar course of conduct. *See supra*, Section III.A. Each named Plaintiff purchased DG Auto motor oil from Dollar General during the class period, Ex. 80, as did every class member. Each named Plaintiff purchased DG Auto motor oil for use in their vehicles manufactured after 1988 or 1930 under the misapprehension that the product was suitable for such use, *id.*, just like every class member. Dollar General's deceptive marketing practices caused Plaintiffs and class members alike to purchase obsolete motor oil and not receive the benefit of the bargain, while allowing Dollar General to gross $156 million. This is the heart of Plaintiffs' and class members' unjust enrichment grievance.

Named Plaintiffs and their experienced counsel are "prepared to prosecute th[is] action vigorously, tenaciously and with adequate financial commitment." *See id.*; *see also supra*

Section III.A. Named Plaintiffs are represented by experienced complex litigation, class action counsel who have already demonstrated that they will vigorously prosecute this case by undertaking extensive discovery and retaining the services of several qualified experts. *See* (Kanner Decl., Ex. 83 and Exhibit A thereto). Plaintiffs' undersigned counsel have decades of experience in class action and consumer litigation that equip them to vigorously and effectively prosecute the litigation. (*Id.*). Moreover, the interests of the named Plaintiffs "coincide with those of the rest of the class." *See Hopkins v. Kan. Teachers Cmty. Credit Union*, 265 F.R.D. 483, 487 (W.D. Mo. 2010) (citing *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 719 (N.D. Ill. 1995). All class members suffered identical damages in that they purchased motor oil that they otherwise would not have purchased but for Dollar General's misrepresentation. Thus, the named Plaintiffs and counsel satisfy the adequacy requirement.

### 2. Common Questions of Fact and Law Predominate

In the present case, common questions of fact would predominate in a nationwide unjust enrichment class. Unjust enrichment classes may be certified despite the existence of individual issues. *See Mojica*, 2017 U.S. Dist. LEXIS 15096 at *26 (certifying two unjust enrichment sub-classes based on differing statute of limitations, stating: "because the critical issue here for purposes of predominance is not whether the elements vary, but rather whether common evidence can be used to satisfy them in a prima facie case."); *Keilholtz.*, 268 F.R.D.at 341 ("the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case."); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 U.S. Dist. LEXIS 44459 at *26 (certifying a nationwide unjust enrichment class, and holding "the variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof.").

23

Dollar General sold the same motor oil with identical labeling in each of its store across the country throughout the entire class period. (Def. Resp. to 1st Rogs., Nos. 2 & 8, Ex. 20); Dollar General Depo. (3/6/18) at 282:8-16, Ex. 3; ███████████████ With regard to the elements of unjust enrichment in particular, Plaintiffs will use common evidence to prove that Dollar General received an unjust benefit at the expense of Plaintiffs and the class members. (It matters not at this stage whether Plaintiffs will be successful in convincing a fact-finder of these facts; rather, it is only important that the evidence used will be common). First, Plaintiffs will produce evidence that Dollar General sold DG Auto motor oil exclusively at Dollar General Stores to prove Dollar general received a benefit. (Def. Resp. to 1st Rogs., No. 4, Ex. 20). Second, Plaintiffs will produce evidence proving that Dollar General was aware that it was selling an inferior product, but intentionally marketed the motor oil as comparable to brand-name motor oil that met the specification for use in modern automobiles. *See supra* Section II. The price at which Dollar General sold its oil remained relatively stable, both in absolute terms and those relative to alternative brands with which Dollar General attempted to market DG Auto motor oil as comparable. (DG05018616, Ex.17). Third, through common evidence, Plaintiffs will prove that they were impoverished, or denied all expected value, as they purchased motor oil that in fact was not intended for use in their vehicles. (Jackson Report, Ex. 10). Based on this along with evidence showing that DG Auto motor oil was an inferior product, unfit for the purpose for which it was marketed and purchased, Plaintiffs will prove that it would be unjust to allow Dollar General to retain the benefit conferred on it by Plaintiffs. Expert testimony common to the Class supports this conclusion. Plaintiffs' experts demonstrate that no reasonable person would have purchased DG Auto motor oil for use in a vehicle manufactured after 1988 if the product were marketed in a non-misleading way. (Jackson Report, Ex. 10; Scott Report, Ex. 41).

24

As the Court previously acknowledged in its Order Denying Defendant's Motion to Strike Plaintiffs' Class Claims under Rule 23, in addition to questions of fact, "[i]n a multi-state class action, variations in state law" must also be considered when analyzing predominance. (Doc. # 102 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)). Courts adjudicating a lawsuit involving a nationwide class "must apply an individualized choice of law analysis to each plaintiff's claim[] . . ." *Georgine v. Amchem Prods.*, 83 F.3d 610, 627 (3rd Cir. 1996) (emphasis added) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985)).[18] In order to do that here, the Court would likely need to consider the law of the forty-three states in which Dollar General sold its DG Auto motor oil during the class period. (Def. Resp. to 1st Rogs., No. 2, Ex. 20).

To demonstrate that any conflict among the unjust enrichment laws of the relevant states would not defeat predominance for the purposes of certifying the nationwide class, Plaintiffs undertook the required "extensive analysis" of state law variances. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005); *Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 324 (Del. 2012) (citing *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986)). Accordingly, Plaintiffs submit Appendix A, attached hereto, which is a survey of the relevant states' unjust enrichment laws. In compiling Appendix A, Plaintiffs' counsel was mindful of the

---

[18] A court presiding over multi-district litigation, must apply choice-of-law rules of the states where the actions were originally filed." *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996). The majority of jurisdictions in which cases have been filed follow the *Restatement (Second) of Conflicts of Law*. *See* Symeon C. Symeonides, *Choice of Law in the American Courts in 2016: Thirtieth Annual Survey* (2017) (available at https://ssrn.com/abstract=2919145). Under the *Restatement*, courts give equal weight to the place of domicile of the parties as well as the place in which the relationship was centered and where the injury occurred. *See* § 145. Thus, courts applying the *Restatement* would in all likelihood apply the law of the state in which the motor oil was purchased. Although a few jurisdictions, namely Kentucky and Michigan, favor the application of the law of the forum state ("*lex forti)*," the application of the forum's law would nevertheless be limited by *Phillips*, 472 U.S. 797.

various court decisions that express trepidation with regard to potential conflicts among the various states' unjust enrichment laws, including *Vista Healthplan, Inc. v. Cephalon, Inc.*, which succinctly catalogs what courts have generally found to be among the most troublesome differences between the various states' unjust enrichment laws. 2015 U.S. Dist. LEXIS 74846, *82-83 (E.D. Pa. June 10, 2015) (citing *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 153 (E.D. Pa. March 23, 2015)). Among those conflicts are: (1) differences between the various statute of limitations periods, (2) differences between the availability and circumstances under which such periods will be tolled, (3) whether unjust enrichment may be asserted as an independent cause of action, (4) whether the assertion of an unjust enrichment claim requires that there be no adequate remedy at law, (5) whether the assertion of a claim requires that the benefit be directly conferred upon the defendant, (6) differences between the levels of misconduct on the part of the defendant necessary to assert a claim, and (7) differences between the defenses available to such claims. *Id*. While Plaintiffs acknowledge there are actual differences among the relevant states' unjust enrichment laws in these respects, such differences are immaterial for the purposes of the present case, as explained below, and thus fail to defeat the predominance for the proposed nationwide unjust enrichment class. The following analysis considers each potential difference in turn along with whether common evidence would suffice to make out a prima facie case for each putative member of the nationwide class.

### i. Statutes of limitation and tolling

States apply various statutes of limitations periods as well as different standards for tolling unjust enrichment claims. *See, e.g., Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 994 (8th Cir. 2007) (three year statute of limitations for Kansas); *Vichi v. Koninklijke Philips Elecs. N.V.*, Civ. Action No. 2578-VCP, 2009 Del. Ch. LEXIS 209, 2009 WL 4345724,

at *15 (Del. Ch. Dec. 1, 2009) (applying three year statute of limitations period, citing 10 Del. Code Ann. § 8106(a)); *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988) (six year statute of limitations period for Minnesota). A thorough survey of the relevant state law could allay concerns about manageability by designating various sub-classes based upon the differing statutes of limitations periods. Such issues, however, are more properly considered under the issue of superiority. *See* Fed. R. Civ. P. 23(b)(3)(D); *see also Backer Law Firm v. Costco Wholesale Corp.*, 321 F.R.D. 343, 350 (W.D. Mo. 2017) ("[superiority] requires the Court to determine whether the class action is manageable."). For now, it suffices to say that differing statutes of limitations periods would not affect the proof of any class members' claims. Thus, these differences do not defeat predominance.

### ii. Directly conferred benefit

While some states hold that a plaintiff must directly confer a benefit onto the defendant, others hold that the benefit may be channeled through a third party. *Compare Sperry v. Crompton Corp.*, 26 A.D.3d 488, 489, 810 N.Y.S.2d 498 (N.Y.A.D. 2 Dept. 2006); *Apache Corp. v. MDU Resources Group, Inc.*, 1999 ND 247, 603 N.W.2d 891, 895 (N.D. 1999); *Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (N.C. App. 1989) (direct benefit required); *to Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982) (recogning unjust enrichment "where a third person benefits from a contract between two others…."); *Smith v. Whitener*, 42 Ark. App. 225, 856 S.W.2d 328, 330 (Ark. App. 1993). In the present case, each of the prospective class members has made payment directly to Dollar General because DG Auto motor oil was sold exclusively at Dollar General stores. (Def. Resp. to 1st Rogs., No. 4, Ex. 20). Therefore, any difference among the states in this regard is immaterial to the present case.

27

### iii. The level of misconduct

Similarly, the differences among state laws regarding a defendant's level of misconduct necessary to support an unjust enrichment claim are immaterial in this case. Some states require illegal or intentional conduct akin to fraud on the part of defendants. *See Burlington Northern R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996) ("Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) ("the term 'unjustly'" should "mean illegally or unlawfully"); *DCB Const. Co., Inc. v. Central City Development Co.*, 965 P.2d 115, 117 (Colo. 1998) (unjust enrichment requires a showing of "some improper, deceitful, or misleading conduct"). Other states do not impose such requirements. *See, e.g.*, *Malone v. Hines*, 822 S.W.2d 394 (Ark. App. 1992). In the present case, Plaintiffs will prove that Dollar General *knowingly* sold inferior motor oil that was in fact harmful to class members' vehicles while marketing it as comparable to other brands which met the specifications for use in modern automobiles. *See supra* Section II. Thus, Plaintiffs' claims satisfy even the most demanding standard, given Dollar General's level of gross and reckless misconduct. Therefore, any differences in levels of misconduct under state laws are also immaterial.

### iv. Available defenses

Additionally, there exist some differences among state laws as to the affirmative defenses that a defendant may assert against unjust enrichment claims. Among these defenses is the defense of laches. Some jurisdictions have explicitly held that a defendant may assert laches as a defense against unjust enrichment claims, while others have held that the defense is not available. *Compare Partipilo v. Hallman*, 510 N.E.2d 8 (Ill. App. Ct. 1987) (prohibiting

application of laches to unjust enrichment claims), *with Crown Linen Serv. v. CT Appliance & Fireplace Distribs.*, 2009 Conn. Super. LEXIS 489 (Conn. Super. Ct. 2009) (noting laches may apply against unjust enrichment claims). Although Defendants' Answer to Plaintiffs' CAC (Doc. # 106) asserts that "[e]ach of the causes of action alleged in the Complaint is barred, in whole or in part, by the equitable doctrines of laches, estoppel and/or unclean hands," there does not appear to be any factual basis for this affirmative defense to apply in this case. Thus, any differences among state laws in this regard would be immaterial to the present case.

     **v.    Adequate remedy at law**

Most states preclude claims of unjust enrichment when the transaction in question is governed by an express contract. *See, e.g.*, *Trustmark Ins. Co. v. Bank One, Arizona, N.A.*, 48 P.3d 485 (Ariz. App. Div. 1 2002); *Interbank Invs. v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Col. Ct. App. 2003); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. 2005) ("where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application.") (quoting *Nesby v. Country Mutual Insurance Co.*, 805 N.E.2d 241, __ (Ill. 2004); *American Towers Owners Ass'n v. CCI Mech.*, 930 P.2d 1182, 1193 (Utah 1996) (citing *Mann v. American W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation.")). But several of those states have carved out exceptions in cases in which the underlying contract fails to provide an adequate remedy. *See, e.g.*, *US v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 608-09 (8th Cir. 1999) (citing *Friends of Children, Inc. v. Marcus*, S.W.2d 603, 605-06 (Ark. 1994); *Westmont Tractor Co. v. Viking Exploration, Inc.*, 543 F. Supp. 1314, 1321 (D. Mont. 1982); *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000); *see also Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, 2006 U.S. Dist.

29

LEXIS 18630, *14-15 (N.D. Ill. April 12, 2006) ("However, unjust enrichment is not necessarily an equitable action. Thus the existence of a full and adequate remedy at law . . . is not always an appropriate reason for dismissal.").

In addition to the existence of an express contract, a few courts have made it clear that a plaintiff may not prevail on a claim of unjust enrichment where other legal remedies are available. *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (Cal. App. 1986) (dismissing claim for unjust enrichment for wrongful dispossession of land because the remedy in tort damages was adequate); *ServiceMaster of St. Cloud*, 544 N.W.2d at 305. Other courts confronted with the issue have declined to bar the equitable remedy. *See Trustmark*, 202 Ariz. at 541 ("Although Trustmark framed the issue using the terminology of an 'adequate' remedy at law, a party's right to seek unjust enrichment is not controlled by whether the party has an 'adequate' remedy at law – in the sense of providing all the relief the party desires – but by whether there is a contract which governs the relationship between the parties.").

Meanwhile, a number of state courts, expressly allow for claims of unjust enrichment despite the existence of another legal remedy. *See Combustion Eng'g, Inc. v. Miller Hydro Group*, 812 F. Supp. 260, 262-63 (D. Me. 1992); *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000); *Prudential Ins. Co. v. Eslick*, 586 F. Supp. 763, 768 (S.D. Ohio 1984); *Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 919 (Tex. App. 2017) (stating bar on equitable claims due to alternative legal remedies is not an absolute rule).

As with the varying limitation periods, any manageability issues resulting from such differences shall be resolved in Plaintiffs' discussion of superiority. The common evidence Plaintiffs will use to prove their claims of unjust enrichment remains unaffected by whether

claims of unjust enrichment may be precluded by other remedies at law. Therefore, the requirement of predominance is satisfied despite these differences.

### vi.    Independent cause of action

Some states have expressly held that an unjust enrichment claim may be asserted as an independent cause of action. *See, e.g.*, *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252, 278 (N.M. Ct. App. 2011) ("[U]njust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from the other two principal grounds for such liability, contract and tort.") (quoting *Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 860 (N.M. 1990); *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 113 (R.I. 2005). Other states, however, hold that unjust enrichment merely describes an equitable remedy only available to plaintiffs asserting another legal claim. *See, e.g., Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 621 (N.H. 2010) (dismissing restitution suit based on unjust enrichment for failure to state a claim, also noting that "unjust enrichment generally does not form an independent basis for a cause of action"); *see also* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss  (Doc. # 102) ("[G]oing forward, the Court notes that Plaintiffs' claims for unjust enrichment in the state of Illinois are predicated on the viability of the other related claims.") (citing *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516-520 (7th Cir. 2011)). Whether or not unjust enrichment may be advanced as an independent cause of action, however, has no bearing on the evidence necessary to establish such a claim, therefore the requirement of predominance remains satisfied.

### 3.  Superiority

Here, a class action is the superior method to adjudicate this litigation fairly and effectively. *See* Fed. R. Civ. P. 23(b)(3); *see also supra* Section III.A. Given the relatively small

amount of individual damages, and the cost of obtaining the type of evidence (including expert opinions) necessary to prove class members' claims, individual actions would result in negative value propositions, meaning that no reasonable consumer would bring such an action. Accordingly, this factor weighs in favor of class certification. *See Amchem Prods, Inc.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action"). Relatedly, there has not been substantial litigation of these claims outside of this consolidated putative class action, which likewise weighs in favor of finding a class action to be superior. *See* Fed. R. Civ. P. 23(b)(3)(B)-(C).

The manageability of the class factor may be implicated insofar as the various differences among the relevant states' unjust enrichment laws are a concern. Nevertheless, these differences would be readily manageable by the designation of sub-classes as shown below. *See, e.g.*, *Mojica*, 2017 U.S. Dist. LEXIS 15096 at *28 ("Given the common evidence that will be used at trial, whatever variances may exist within a particular subclass among different states' elements for unjust enrichment can be adequately addressed through the use of special verdict forms.").

### i. Statutes of limitations

Plaintiffs' CAC, filed on August 29, 2016, defines the class period as running from May 2013 through the present. CAC, ¶ 101. Many of the states in which DG Auto motor oil was sold have a three-year limitations period for claims of unjust enrichment, including: Arizona, Arkansas, California, Delaware, District of Columbia, Kansas, Maryland, Mississippi, New Hampshire, North Carolina, South Carolina, and Virginia. *See* <u>Appendix A</u>. The only states with a shorter limitations period applicable to such claims are Colorado, Oklahoma, and Texas, which apply two-year statute of limitations. *Id*. Alabama, Connecticut, Florida, Georgia, Illinois,

32

Indiana, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, and Wisconsin each have limitations periods of four years or more. *Id.* Because the claims are considered "equitable in nature," West Virginia courts do not apply any statute of limitations to unjust enrichment, considering only the equitable defense of laches. *Absure, Inc. v. Huffman*, 213 W. Va. 651, 655 (W. Va. 2003). In order to bar a claim on the basis of laches, however, a defendant bears the burden of proving prejudice based upon an unreasonable delay. *White v. White*, 2017 W. Va. LEXIS 636, *12 (W.Va. September 1, 2017). To ensure manageability, the Court could designate three sub-classes in accordance with the differing statute of limitations periods. *See, e.g.*, *Mojica*, 2017 U.S. Dist. LEXIS 15096 at *26 (certifying two unjust enrichment sub-classes based on differing statute of limitations).

### ii.    Adequate remedy at law

Although actual differences among the laws exist, the Court could readily manage such differences by designating three sub-classes: (1) states which allow claims of unjust enrichment whether or not an express contract governs the transaction at issue or other legal remedies are available; (2) states which bar claims of unjust enrichment where an express contract exists; and (3) states which expressly bar claims of unjust enrichment where an express contract or any other remedy at law is available to plaintiffs. States falling within the first sub-class include Maine and Maryland. *See* Appendix A. The second sub-class includes Alabama, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Illinois, Iowa, Kentucky, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Vermont, Virginia, West Virginia, and

Wisconsin. *Id.* Arizona, Delaware, Indiana, Kansas, Louisiana, Massachusetts, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Oklahoma, South Carolina, Utah fall within the third sub-class. *Id.*

### iii. Independent cause of action

Although some states have held that unjust enrichment is not an independent cause of action, most states recognize it as such. *See Restatements (Third) of Restitution and Unjust Enrichment* § 1 (2011) ("The identification of unjust enrichment as an independent basis of liability in common-law legal systems – comparable in this respect to a liability in contract or tort – was the central achievement of the 1937 Restatement of Restitution."). When confronted with the issue, many courts have expressly stated as much. *See, e.g.*, *Hydro Conduit Corp*, 793 P.2d at 857 ("New Mexico law recognizes such a cause of action."); *Dellagrotta*, 873 A.2d at 113 ("Under Rhode Island law, unjust enrichment is not simply a remedy in contract and tort but can stand alone as a cause of action in its own right."). Others clearly accept unjust enrichment as an independent cause of action based on their entertainment of such claims. *See, e.g.*, *Reidling v. Holcomb*, 483 S.E.2d 624 (Ga.App. 1997). Even among those state courts suggesting unjust enrichment merely represents a theory of restitution, many align the concept with claims asserted under a theory of "quasi-contract," which may be asserted as an independent cause of action. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Only two states, Illinois and New Hampshire, have held that a claim of unjust enrichment depends on the merits of another legally cognizable cause of action. *Gen. Insulation Co.*, 992 A.2d at 621; *see also* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ( Doc. # 102) (explaining that Plaintiffs' Illinois unjust enrichment claims will be based on the viability of other related claims.) (citing *Cleary*, 656 F.3d at 516-520). To the extent state laws preclude

34

claims of unjust enrichment unless otherwise associated with another legal cause of action, the Court can again designate sub-classes comprised, respectively, of the majority of states allowing unjust enrichment or quasi-contract to proceed as an independent cause of action and of those states which bar independent claims.

## B. The Court should certify Plaintiffs' Nationwide Implied Warranties Class.

In addition to their Nationwide Unjust Enrichment Class, Plaintiffs propose a Nationwide Implied Warranties Class to be governed under Tennessee law, defined as follows:

> All persons in the United States who purchased Defendants' DG-branded motor oil, DG SAE 10W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for re-sale, since February 8, 2012.[19]

A choice-of-law analysis supports the application of Tennessee law to this class' implied warranty claims. Moreover, the class satisfies the applicable requirements of Rule 23(a) and (b)(3). So, Plaintiffs' Nationwide Implied Warranties Class should be certified.

### 1. A choice-of-law analysis results in the application of Tennessee law.

While "Rule 23 'makes no reference to choice-of-law issues, [] in nationwide class actions, choice-of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case." *True v. ConAgra Foods, Inc.*, 2011 U.S. Dist. LEXIS 6770, *17-*18 (W.D. Mo. Jan. 4, 2011) (citations omitted). Here, Tennessee law applies to each Nationwide Implied Warranties Class member's claims and does not present insuperable obstacles to class certification. *See id.* The application of Tennessee law is supported by a choice-of-law analysis.

District courts sitting in diversity jurisdiction generally apply the choice-of-law rules of the state in which they sit. *See*, *e.g.*, *Winter v. Novartis Pharm's Corp.*, 739 F.3d 405, 410 (8th

---

[19] Plaintiffs slightly modified their class definition from that presented in the CAC.

Cir. 2014). In multi-district litigation, however, the transferee court applies the state choice-of-law rules that would have applied in the transferor court but for the consolidation. *See*, *e.g.*, *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d 1063, 1077 (E.D. Mo. 2008).

Here, over half the states from which cases have been filed or transferred—California, Colorado, Illinois, Kentucky, Michigan, Missouri, Nebraska, Ohio, Texas, and Wisconsin—follow the *Restatement (Second) of Conflict of Laws* § 188 with respect to conflicts arising from contract.[20] Under the *Restatement* approach, where state laws conflict, courts apply the substantive law of the state with the "most significant relationship" to the occurrence underlying the lawsuit. *See*, *e.g.*, *Winter*, 739 F.3d at 410 (quoting *Restatement* § 188(1)). The factors to be considered are: the place of contracting; place of negotiation; place of performance; location of the subject matter of the contract; and domicile, residence, nationality, place of incorporation, and place of business of the parties. *Restatement*, § 188(2). These contacts are evaluated according to their relative importance with respect to the particular issue. *Id.*[21]

Less than half of the relevant states apply approaches other than that of the *Restatement*. Three of those states – Florida, Kansas, and Maryland – apply the *lex loci contractus* approach to

---

[20] *See*, *e.g.*, *Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1151-52 (Cal. 1992); *Woods Bros. Homes, Inc. v. Walker Adjustment Bur.*, 601 P.2d 1369, 1372 (Colo 1979); *Champagnie v. W.E. O'Neil Constr. Co.*, 395 N.E.2d 990, 997 (Ill. App. Ct. 1979); *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977); *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 701 n.14 (Mich. 1995); *Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo. Ct. App. 1978); *Powell v. Am. Charter Fed. Sav. & Loan Ass'n*, 514 N.W.2d 326, 331 (Neb. 1994); *Gries Sports Ent's, Inc. v. Modell*, 473 N.W.2d 807, 810 (Ohio 1984); *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991); *Haines v. Mid-Century Ins. Co.*, 177 N.W.2d 328, 330 (Wis. 1970).

[21] The *Restatement* also directs consideration of: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Restatement (Second) of Conflict of Laws*, § 6.

36

conflicts of law for contract matters, under which the law of the place of contracting generally governs. *See*, *e.g.*, *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1164 (Fla. 2006); *Brenner v. Oppenheimer*, 44 P.3d 364, 374 (Kan. 2002); *Erie Ins. Exch. v. Hefferman*, 925 A.2d 636, 648 (Md. 2006). New York and North Carolina employ a "center of gravity" or "grouping of contacts" analysis. *See*, *e.g.*, *Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 939 (N.Y. 1993); *Boudreau v. Baughman*, 368 S.E.2d 849, 854-55 (N.C. 1988). New Jersey uses a mixed approach under which "the law of the place of the contract ordinarily governs," except that this approach "should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction." *State Farm Mut. Auto Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 492-93 (N.J. 1980). Finally, Minnesota follows Leflar's choice-influencing analysis, under which a court considers predictability of result, maintenance of interstate order, simplification of the judicial task, advancement of the forum's governmental interest, and application of the better rule of law. *See*, *e.g.*, *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123-24 (8th Cir. 2012); *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 48-49 (Minn. 1979).

Under these various approaches, the law of the state where a defendant is located and conducts business, where the defendant drafts its contracts, and where the relevant bad acts occurred, carries significant weight. *See*, *e.g.*, *Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641, 645 (8th Cir. 2015) (discussing district court's application of law of the state where defendants drafted insurance documents at issue); *Cuesta v. Ford Motor Co.*, 209 P.3d 278, 285 (Okla. 2009) (applying law of defendant manufacturer's home state where defective product was developed to breach of express and implied warranty claims).[22] In *Watkins*, *supra*, the district

---

[22] *See also Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 175 (D. Mass. 2010) (applying law of defendant manufacturer's home state to implied warranty and other claims arising from defective hip implant device); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 U.S. Dist. LEXIS

37

court held that "[i]n a product defect class action, . . . the deciding factor is the manufacturer's location because it provides a hub linking the spokes of the proposed class." 692 F. Supp. 2d at 174-75. In *Cuesta*, the state supreme court similarly held that for "breach of warranty claims," the law of "the state of [the defendant]'s principal place of business as manufacturer" applied because it was in that state that the defendant "controlled the specifications, [and] requirements and testing for the [product]." 209 P.3d at 285. Therefore, the state where the defendant's principal place of business was located "ha[d] a greater 'intensity of interest' than any other state involved." *Id*. The "significant aggregation of contacts" in that state made the application of its "law to the breach of warranty claims [] neither arbitrary nor fundamentally unfair, and thus, constitutional." *Id*.

In this case, Tennessee law properly governs the Nationwide Implied Warranties Class' claims. Tennessee is home to Dollar General and is the "hub linking the spokes of the proposed class." *See Watkins*, 692 F. Supp. 2d at 174-75. Indeed, Dollar General's decision to sell obsolete motor oil was made at Dollar General's headquarters in Tennessee. *Supra* Section II. That decision was approved centrally every year from the time Dollar General began selling it until 2017. *Id*. Moreover, it was from its headquarters in Tennessee that Dollar General controlled the specification of the obsolete oil, contracted with its vendors, implemented the Brand & Packaging Guidelines that governed the labeling of its DG store-brand products, made the decision to remove the front-label warning on its 10W-40 motor oil bottle, etc. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

---

94765, at *24-25 (D.N.J. Dec. 28, 2007) (applying law of defendant manufacturer's home state where warranty program was based for defective product claims).

█████████████████████████████ Essentially, the relevant deceptive and misleading sales practices that led to Plaintiffs and class members' implied warranty claims stem from the decisions and actions taken by Dollar General in Tennessee. Because Tennessee "has a greater 'intensity of interest' than any other state involved" in these implied warranty claims," "[i]ts law should be applied." *See Cuesta*, 209 P.3d at 285.

### 2. Rule 23(a)'s requirements are satisfied.

Plaintiffs satisfy the basic requirements of Rule 23(a). First, the class is clearly defined and ascertainable, in that it includes any person in the U.S. that purchased, from February 8, 2012 to the present, the relevant obsolete DG Auto motor oil for personal use in their modern vehicle.

Moreover, the class is sufficiently numerous. *See Bradford*, 187 F.R.D. at 604. The Nationwide Implied Warranties Class consists of ██████████████ the country who purchased DG's obsolete motor oils between 2012 and early 2017, when Dollar General finally stopped selling the products. ████████████████████████ The large number of persons whose implied warranty claims are based on the modest price of quarts of motor oil easily satisfies Rule 23(a)(1)'s numerosity requirement because joinder would be wholly impracticable. *See Paxton*, 688 F.2d at 559-60.

The Nationwide Implied Warranties Class also has commonality. The class' claims present substantial common questions of law and fact, the answers to which will drive a resolution. *See generally Sandusky Wellness Ctr., LLC*, 821 F.3d 992; *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 619 ("In the case of warranty and negligence claims premised on a universal and inherent product defect . . . plaintiffs may rely on common evidence to establish a prima facie case . . . ."). The common questions here include, but are not limited to:

39

For the Implied Warranty of Merchantability Claim:

- Whether Dollar General's obsolete motor oils sold in or after 2012 pass without objection in the retail motor oil industry or trade given that they were sold (a) without a front-label warning that they were only for use in vehicle model years 1988 (or 1930) or earlier, (b) in Dollar General stores selling general retail goods, (c) branded as "everyday products" that are cheaper than name-brand products, (d) on store shelves in the automotive section beside name-brand motor oil products that were for use in both old and new cars;

- Whether Dollar General's obsolete motor oils sold are of average quality within the product labeling description;

- Whether Dollar General's obsolete motor oils sold are fit for the ordinary purposes for which these goods are used;

- Whether Dollar General's obsolete motor oils sold are adequately contained, packaged, and labeled; and

- Whether Dollar General's obsolete motor oils sold conform to the promises or affirmations of fact made in the product packaging.

For the Implied Warranty of Fitness for a Particular Purpose Claim:

- Whether the evidence supports an inference that consumer class members purchased these products for the specific purpose of use in post-1988 (or 1930) model motor vehicles, given that Dollar General sold obsolete motor oils in or after 2012 (a) without a front-label warning that they were only for use in vehicle model years 1988 or earlier, (b) in Dollar General stores selling general retail goods, (c) branded as "everyday products" that are cheaper than name-brand products, (d) on store shelves in the automotive section beside name-brand motor oil products that were for use in both old and new cars;

- Whether Dollar General's sale of obsolete motor oils as described gave Dollar General reason to know that consumer class members were purchasing these products for the purpose of use in post-1988 model motor vehicles;

- Whether Dollar General's obsolete motor oils sold were in fact fit for the purpose of use in post-1988 model motor vehicles.

Since common answers to these questions underpinning Plaintiffs' implied warranty claims will drive their resolution for the nationwide class, Rule 23(a)(2) is satisfied.

40

Plaintiffs satisfy the low requirement of typicality because Plaintiffs are typical of the members of the Nationwide Implied Warranties Class. *See Alpern*, 84 F.3d at 1540. All named Plaintiffs purchased one of the obsolete DG Auto motor oil products for use in a post-1988 (or post-1930) model vehicle. *See* CAC, ¶¶ 82-99. By class definition, any class member will have purchased at least one of the obsolete DG Auto motor oils for use in a car newer than 1988 (or 1930), just like named Plaintiffs. The legal claims that these products were not merchantable or fit for the purpose of use in post-1988 (or post-1930) vehicles is the same for Plaintiffs and class members alike. Thus, typicality is met. *See DeBoer*, 64 F.3d at 1174-75.

Finally, Plaintiffs and their undersigned counsel will fairly and adequately protect the interests of members of the Nationwide Implied Warranties Class. *See supra* Sections III.A & IV.A.1. As set forth with respect to typicality, the named Plaintiffs have common interests with the nationwide class members because they assert the same substantive claims based on the same operative facts. *See Paxton*, 688 F.2d at 562-63. Thus, Rule 23(a)(4)'s requirements for adequate class representation are satisfied.

### 3. Rule 23(b)(3)'s requirements are satisfied.

#### i. Common questions of fact and law predominate over the issues presented by the Nationwide Implied Warranties Class under Tennessee law.

Predominance is satisfied for the Nationwide Implied Warranties Class under Tennessee law for Plaintiffs' claims for breach of implied warranty of merchantability as well as breach of implied warranty of fitness for a particular purpose.

#### a. Implied Warranty of Merchantability

For their implied warranty of merchantability claim, Plaintiffs must prove that Dollar General's obsolete motor oils:

- would not "pass without objection in the trade under the contract description;"

41

- are not "fit for the ordinary purposes for which such goods are used;"

- are not "adequately contained, packaged, [or] labeled as the agreement may require;" *or*

- do not "conform to the promises or affirmations of fact made on the container or label[.]"

Tenn. Code. Ann. § 47-2-314. Each one of these is determined based on an objective standard applied at the time of delivery. *See*, *e.g.*, *Autozone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 948 (W.D. Tenn. 2010) ("Establishing that goods are not fit for their ordinary purposes requires only proof, in a general sense and as understood by a layman, that something was wrong with the product.") (quotation marks and citations omitted). Implied warranty claims requiring this type of objective evidence are suitable for Rule 23(b)(3) class certification because they present predominating common issues of law and fact. *See*, *e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 619 ("In the case of warranty and negligence claims premised on a universal and inherent product defect, however, plaintiffs may rely on common evidence to establish a prima facie case because there is no similar reliance requirement for such claims."); *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 U.S. Dist. LEXIS 75605, at *12-13 (W.D. Mo. June 11, 2015).

Moreover, the class' implied warranty of merchantability claim raises no substantial individualized issues that would overcome the predominance of common questions, facts, and proof. Although Tennessee still requires contractual privity for implied warranty of merchantability claims, *see Leach v. Wiles*, 429 S.W.2d 823, 831 (Tenn. 1968), this does not raise an individualized proof issue because the obsolete DG Auto motor oils at issue are *store-branded* products where the contracting seller and the warranting manufacturer are one and the same. Therefore, there was no option to purchase the DG Auto motor oil from anyone other than Dollar General. Because each Plaintiff and class member purchased DG Auto motor oil directly

42

from Dollar General, Plaintiffs and class members were in privity with Dollar General at the time of sale. This is true for each Plaintiff and class member.

Similarly, although Tennessee requires notice of breach, *see* Tenn. Code Ann. § 47-2-607(a)(3), this also does not raise an individualized proof issue because "[n]othing in the plain text of the statute indicates that a lawsuit cannot serve as this notification." *Smith v. Pfizer, Inc.*, 688 F. Supp. 2d 735, 750 (M.D. Tenn. 2010). So at the very least, the Complaint in this action may serve as each Plaintiff's and class member's notice of breach to Dollar General.

Nor does Tennessee's treatment of any alleged "misuse" of the product as a possible defense create individualized proof issues. Tennessee recognizes misuse as a defense to *tort* claims for personal injury or property damage. *See*, *e.g.*, *Norman v. Fisher Marine, Inc.*, 672 S.W.2d 414, 422 (Tenn. Ct. App. 1984). But, here, Plaintiffs and the class seek *contractual* damages based on the retail purchase price of the obsolete oils for Dollar General's breach of implied warranty for merchantability. *See* CAC, ¶¶ 143, 169 (purchase price damages); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 479 (C.D. Cal. 2012) (post-purchase product misuse defense is not applicable to claim for purchase-price damages based on design defect at time of sale).

### b. Implied Warranty of Fitness for Particular Purpose

Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose also satisfies Rule 23(b)(3)'s predominance requirement because the questions of law and fact associated with the class' claim are common and will be proven with common evidence. This claim requires proof that:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Tenn. Code Ann. § 47-2-315.

The primary evidence relevant to this claim concerns Dollar General's knowledge and conduct during 2012 to 2017: Dollar General's knowledge of its customers' expectations and shopping habits (*e.g.*, buying items at Dollar General for general everyday products, spending less than 10 minutes in a store and purchasing 5-6 items which is not enough time to read the fine print on the back of each product label); Dollar General's branding and marketing of its DG store-brand products as "offer[ing] shoppers a variety of products that are less expensive but guaranteed to be comparable in quality to national brands" (SCH-01985 at p.3, Ex. 5); Dollar General's product placement of its obsolete motor oils next to name-brand motor oils in its automotive section; Dollar General's knowledge that its DG Auto motor oils were not of the same quality specification as the name-brand motor oils; Dollar General's packaging of the DG Auto motor oils (*e.g.*, removing the front-label warning and including only a fine-print warning on the back label); Dollar General's actual or constructive knowledge that customers' intended to use the DG Auto motor oils in cars made after 1988; and Dollar General's volume of sales of its motor oil compared to the relative likelihood that that many of its consumers were purchasing DG motor oil for pre-1988 cars. *See supra* Section II.

Although buyer reliance also is an element of this claim, *see Jet Printing, LLC v. Deep S. Wholesale Paper Co.*, No. M2001-02582-COA-R3-CV, 2003 Tenn. App. LEXIS 46, at *14 (Jan. 22, 2003), a buyer's reliance on Dollar General's skill or judgment to furnish suitable motor oil for cars made after 1988 (or 1930) is inferable from the common facts of the transaction discussed above, and that fact that Dollar General continued selling the motor oil nearly 30 years after 1988. *Cf. Lee v. Carter-Reed Co., LLC*, 4 A.3d 561, 579-80 (N.J. 2010) (finding that where a product "is a 'credence' good that is known only through the benefits promised by the

44

product's manufacturer and distributor at the time of purchase. . . . If all of the promised benefits of [the product] are based on untruths and disseminated through false advertising, whatever the medium, a trier of fact may fairly infer that a consumer purchasing the product was influenced, in some way or other, by the false-marketing scheme."). Since the buyer's purpose to obtain suitable motor oil is inferable from this context and the primary question of "whether the product was fit for the particular purpose for which it was bought," *Autozone*, 737 F. Supp. 2d at 950, is provable with common evidence, the class' breach of implied warranty for fitness of a particular purpose claim satisfies Rule 23(b)(3)'s predominance requirement. *See*, *e.g.*, *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 641-42 (D. Colo. 1986) (certifying class for implied warranty of fitness claims); *Miller v. Volkswagen of Am., Inc.*, No. E-07-047, 2008 Ohio App. LEXIS 3968, at *21-22 (Sept. 19, 2008) (same).

      **ii.    Assuming arguendo that the laws of multiple states apply, certification is nevertheless appropriate for a Multi-State Implied Warranties Class.**

If the Court determines that the applicable conflict of laws analysis requires application of Plaintiffs' and class members' home-state laws, it still should certify a Multi-State Implied Warranties Class defined as:

> All persons in the United States who purchased Defendants' DG-branded motor oil, DG SAE 10W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988 and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for re-sale, since February 8, 2012 in the states of Arkansas, California, Florida, Georgia, Illinois, Indiana, Kansas, Louisiana, Maryland, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, or Virginia; since February 8, 2011 in the states of Iowa or Oklahoma; since February 8, 2010 in the state of Wisconsin; and since February 8, 2013 in the states of Colorado or Connecticut.

45

This Multi-State Implied Warranties Class may be certified because there are no outcome-determinative conflicts among the relevant states' laws with respect to the implied warranty claims, and the claims present predominating common issues of law and fact.

> **a.** **The Multi-State Implied Warranties Class satisfies Rule 23(a)'s requirements.**

For the same reasons that the Nationwide Implied Warranties Class met the requirements of Rule 23, so too does the Multi-State Implied Warranties Class. *See supra* Section IV.B.2.

> **b.** **The Multi-State Implied Warranties Class satisfies Rule 23(b)(3)'s requirements.**

> ***i.*** **Implied warranty of merchantability**

All states in the proposed Multi-State Implied Warranties Class have adopted U.C.C § 2-314,[23] except Louisiana which has a substantively similar statute.[24] The U.C.C. provision provides that a product sale must be accompanied by an implied warranty of merchantability "if the seller is a merchant with respect to goods of that kind," unless otherwise excluded. U.C.C. § 2-314(1). The implied warranty requires that the product "be merchantable," *id*., in that it must at least:

(a) pass without objection in the trade under the contract description; and
. . .
(c) [be] fit for the ordinary purposes for which such goods are used; and
. . .
(e) [be] adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promise or affirmations of fact made on the container or label if any.

---

[23] *See* Ark Code. Ann. § 4-2-314; Cal. U. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. § 42A-2-314; Fla. Stat. § 672.314; O.C. Ga. § 11-2-314; 810 ILCS 5/2-314; Ind. Code Ann. § 26-1-2-314; Iowa Code § 554.2314; Kan. Stat. Ann. § 84-2-314; Md. Code Ann. Com. Law § 2-314; N.J. Stat. Ann. § 12A:2-314; N.Y.C.L.S. UCC § 2-314; N.C. Gen. Stat. § 25-2-314; Ohio Rev. Code Ann. § 1302.27; 12A Okla. St. § 2-314; 13 Pa. Cons. Stat. Ann. § 2315; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code § 2.314; Va. Code § 8.2-314; Wis. Stat. Ann. § 402.314.

U.C.C. § 2-314(2). The requirements of these U.C.C.-based statutes are determined based on an objective standard applied at the time of delivery. *See, e.g., J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Insp. & Ins. Co.*, 341 F.3d 149, 153 (2d Cir. 2003) (explaining that "issues of merchantability, operative fitness, or mechanical utility [] are typically adjudicated under the standard of objective reasonableness."). This objective standard requires objective evidence which makes this Multi-State Implied Warranties Class fit for class certification because it presents predominating common issues of law and fact. *See, e.g., In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 619; *Claxton*, 2015 U.S. Dist. LEXIS 75605, at *12-13.

### ii.     Implied warranty for fitness for a particular purpose

All of the states included in the Multi-state Implied Warranties Class have enacted U.C.C. § 2-315 or one substantively the same.[25] Section 2-315 provides that:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

U.C.C. § 2-315. Because all states have adopted the same or substantively the same provision, the law governing the Multi-state Implied Warranties Class' breach of implied warranty for fitness of a particular purpose claim would be common to Plaintiffs and the class.

---

[25] *See* Alaska Stat. § 45.02.315; Ark Code. Ann. § 4-2-315; Cal. U. Com. Code § 2315; Colo. Rev. Stat. § 4-2-315; Conn. Gen. Stat. § 42A-2-315; Fla. Stat. § 672.315; O.C. Ga. § 11-2-315; 810 ILCS 5/2-315; Ind. Code Ann. § 26-1-2-315; Iowa Code § 554.2315; Kan. Stat. Ann. § 84-2-315; Md. Code Ann. Com. Law § 2-315; N.J. Stat. Ann. § 12A:2-315; N.Y.C.L.S. UCC § 2-315; N.C. Gen. Stat. § 25-2-315; Ohio Rev. Code Ann. § 1302.28; 12A Okla. St. § 2-315; 13 Pa. Cons. Stat. Ann. § 2315; Tenn. Code Ann. § 47-2-315; Tex. Bus. & Com. Code § 2.315; Va. Code § 8.2-315; Rev. Code Wash. § 62A.2-315; Wis. Stat. Ann. § 402.315; *see also* La. Civ. Code Ann. Art. 2524 ("Where the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or his particular purpose.").

The evidence to prove Dollar General's breach of the implied warranty for fitness of a particular purpose claim also is common to the class and the Plaintiffs. The primary evidence supporting the claim is the same as the evidence discussed for the Nationwide Implied Warranties Class. *Supra* Section IV.B.3.i.b. And although buyer reliance is an element for breach of an implied warranty for fitness of a particular purpose, for the same reasons it did not present issues of individualized proof for the Nationwide Implied Warranties Class, it also does not for the states with a reliance requirement[26] in this Multi-State Implied Warranties Class. *Id*.

### c. There are no dispositive state-specific issues or individualized issues that would predominate the Multi-State Implied Warranties Class.

There are no outcome-determinative differences or predominating individualized proof issues among the 22 states in the proposed Multi-State Implied Warranties Class.

---

[26] *See*, *e.g.*, *Prince v. LeVan*, 486 P.2d 959, 966 (Alaska 1971); *E.I. DuPont de Nemours & Co. v. Dillaha*, 659 S.W.2d 756, 757 (Ark. 1983); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985); *Klipfell v. Neill*, 494 P.2d 115, 117 (Colo. Ct. App. 1972); *Torrence v. Durisol, Inc.*, 20 Conn. Supp. 62, 64-65 (Conn. Super. Ct. 1956); *Smith v. Burdine's, Inc.*, 198 So. 223, 229 (Fla. 1940); *Bruce v. Calhoun First Nat'l Bank*, 216 S.E.2d 622, 625 (Ga. Ct. App. 1975); *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508, 516 (7th Cir. 1988) (Illinois law); *U.S. Automatic Sprinkler Co. v. Reliable Automatic Sprinkler Co.*, 719 F. Supp. 2d 1020, 1028 (S.D. Ind. 2000); *Budny v. Member Select Ins. Co.*, 895 N.W.2d 923 (Iowa Ct. App. 2017); *Golden v. Den-Mat Corp.*, 276 P.3d 773, 779 (Kan. Ct. App. 2012); *Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 375 (Md. 2001); *New Jersey Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 329 (3d Cir. 2007) (New Jersey law); *Spinella v. Atlantic Tug & Equip. Co., Inc.*, 127 N.Y.S.2d 641, 644 (App. Div. 1954); *Southeastern Adhesives Co. v. Funder Am., Inc.*, 366 S.E.2d 505, 508 (N.C. Ct. App. 1988); *Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 619 (Ohio Ct. App. 2003); *Collins Radio Co. v. Bell*, 623 P.2d 1039, 1055 (Okla. Ct. App. 1980); *Visual Comms., Inc. v. Konica Minolta Bus. Sol's USA, Inc.*, 611 F. Supp. 2d 465, 471 (E.D. Pa. 2009); *Jet Printing*, 2003 Tenn. App. LEXIS 46, at *14; *New Holland Machine Co. v. Lewis*, 470 S.W.2d 234, 238 (Tex. 1971); *Layne Atlantic Co. v. Koppers Co., Inc.*, 201 S.E.2d 609, 615 (Va. 1974); *Lewis and Sims, Inc. v. Key Indus., Inc.*, 557 P.2d 1318, 1323 (Wash. Ct. App. 1976); *Calumet Cheese Co., Inc. v. Chas. Pfizer & Co., Inc.*, 130 N.W.2d 290, 295 (Wis. 1964).

48

### i. *Vertical Privity*

Although several of these states require privity of contract for a buyer to recover in contract for breach of an implied warranty,[27] privity does not raise an individualized proof issue for the same reasons it does not raise any individualized proof issues in the Nationwide Implied Warranties Class. *See supra* Section IV.B.3.i.a.

### ii. *Notice of Breach*

Likewise, although notice requirements vary among the laws of the 50 states, there are no outcome determinative differences among the 22 states included in the proposed Multi-State Implied Warranties Class. All of the relevant notice requirements are satisfied as discussed below.

The courts in 12 of the 22 states— Arkansas, California, Colorado, Connecticut, Illinois, Indiana, Iowa, Louisiana, Ohio, Pennsylvania, Texas, and Wisconsin—hold that an implied warranty defendant has notice of breach based on its actual knowledge of the product's non-conforming condition.[28] The courts in two other states—Georgia and Virginia—have not directly

---

[27] *See*, *e.g.*, *Garthwait v. Burgio*, 216 A.2d 189, 192 (Conn. 1965); *Board of Educ. v. A, C&S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989); *Leach*, 429 S.W.2d at 831.

[28] *See*, *e.g.*, *Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 491 (W.D. Ark. 1993) (citing Ark. Code Ann. § 4-1-202(a)); *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, MDL No. 1687, 2008 U.S. Dist. LEXIS 73690, at *34 (D.N.J. Sept. 3, 2008) (California law); *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 207 n.3 (Colo. 1984); *Exp. Dev. Canada v. T. Keefe & Son, LLC*, No. 950328945, 2016 Conn. Super. LEXIS 2815, at *53 (Conn. Super. Ct. Nov. 9, 2016) (citing Conn. Gen. Stat. § 42a-4-402); *Arcor v. Textron, Inc.*, 960 F.2d 710, 715 (7th Cir. 1992) (Illinois law); *Advantage Eng'g v. Burks Pumps*, No. IP-92-442-C, 1993 U.S. Dist. LEXIS 20084, at *24-25 (S.D. Ind. July 23, 1993); *Archer Daniels Midland Co. v. Eco, Inc.*, 821 F. Supp. 2d 1083, 1098 (S.D. Iowa 2011) (citing Iowa Code § 554.1202); *Harrison v. Slidell Specialty Hosp., L.P.*, No. 2013-CA-0691, 2013 La. App. Unpub. LEXIS 817, at *12-13 (La. Ct. App. Dec. 27, 2013) (citing La. Civ. Code Ann. art. 2522); *Galoski v. Stanley Black & Decker, Inc.*, No. 1:14-cv-553, 2015 U.S. Dist. LEXIS 114663, at *18-19 (N.D. Ohio Aug. 28, 2015); *Samuel-Bassett v. Kia Motors of Am., Inc.*, 34 A.3d 1, 26 (Pa. 2011); *Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F. Supp. 3d 661, 669 (W.D. Tex.

49

addressed this issue for implied warranty claims, but have accepted the general proposition that a party's actual knowledge of a fact establishes notice.[29] For these 14 states, the evidence of Dollar General's knowledge of the obsolescence and mislabeling of the products at issue as early as 2009-2010 establishes that it had notice of class members' implied warranty claims. (DG05008747, Ex. 87; DG01000208, Ex. 88; DG01000294, Ex. 89).

The courts in seven[30] of the 22 states—Colorado, Kansas, New Jersey, New York, North Carolina, Oklahoma, and Tennessee—hold that for retail consumers the filing of a lawsuit satisfies the notice requirement.[31] Thus, the filing of this class action gave Dollar General the required notice for consumer class members in these eight states.

Finally, the named Plaintiffs representing the two remaining states—Florida and Maryland—both gave Dollar General pre-suit notice. *See* CAC, ¶¶ 164-165.

Because every named Plaintiff and class member satisfies the notice requirement with proof from common evidence of Dollar General's knowledge, the filing of these lawsuits, and by the named Plaintiffs' provision of pre-suit notice, the U.C.C.'s notice requirement does not present a predominating individualized proof issue.

---

2015); *Cornerstone Design, Ltd. v. Elumatec USA, Inc.*, No. 2005-AP-2448, 2007 Wis. App. LEXIS 540, at *18-19 (Wis. Ct. App. June 13, 2007).

[29] *See, e.g.*, *Fedeli v. UAP/Ga. Ag. Chem., Inc.*, 514 S.E.2d 684, 690 (Ga. Ct. App.1999); *Dotson v. Commonwealth*, No. 1416-02-2, 2003 Va. App. LEXIS 282, at *10 (Va. Ct. App. May 6, 2003).

[30] Colorado applies the first two approaches such that notice in that state can be based on knowledge or the filing of a complaint.

[31] *See, e.g.*, *Wallman v. Kelley*, 976 P.2d 330, 332 (Colo. Ct. App. 1998); *Graham ex rel. Graham v. Wyeth Labs.*, 666 F. Supp. 1483, 1500 (D. Kan. 1987); *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487,1498 (D.N.J. 1988); *Sloan v. VM, LLC*, 287 F. Supp. 3d 840, 884-85 (N.D. Cal. 2018) (New York law) (citing *Panda Captial Corp. v. Kopo Int'l, Inc.*, 242 A.D. 2d 690, 692, 662 N.Y.S. 2d 584 (1997)); *Maybank v. S.S. Kresge Co.*, 273 S.E.2d 681, 685 (N.C. 1981); *Sisemore v. Dolgen Corp.*, 212 F. Supp. 3d 1106, 1111 (N.D. Okla. 2016); *Smith v. Pfizer*, *supra*, 688 F. Supp. 2d at 749 (Tennessee law).

50

### iii. *Statutes of Limitations*

The few differences among the statutes of limitations in the 22 states applicable to the class's implied warranty claims also do not defeat predominance, given that the class has been defined and designed with statutes of limitations in mind. The class is defined and limited to purchases made on or after February 8, 2012 – four years before the Complaint was filed for the 17 of the 22 states in the proposed class that have four-year statutes of limitations[32] and to purchases made on or after February 8, 2013 for the two states that have a three year statutes of limitations.[33] Iowa, Oklahoma, and Wisconsin have longer statutes of limitations, five or six-years,[34] that likewise are accounted for in the class definition. *See supra* Section IV.B.3.ii.b.ii.

### iv. *Buyer Misuse of the Product*

Finally, the defense of buyer misuse of a product likewise does not present any individualized proof issues, let alone any predominating ones, because this defense does not apply to Plaintiffs' and the class' contract-based implied warranty claims for purchase-price damages. States recognize two distinct forms of implied warranty of merchantability: one sounding in contract for recovery of purchase price economic loss, and the other sounding in tort for recovery of personal injury or property damages caused by the product's non-merchantable condition. *See*, *e.g.*, *Lloyd v. GMC*, 916 A.2d 257, 289 (Md. 2007) ("'The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff having an accident causing physical

---

[32] *See* Ark. Rev. Stat. § 47-2725; Cal. U. Com. Code § 2725; Fla. Stat. Ann. § 95.11(3)(k); O.C. Ga. § 11-2-725; 810 IL C.S. § 5/2-725; Ind. Code § 26-1-2-725; Kan. Stat. Ann. § 84-2-725; La. Com. Code art. 2534; Md. Com. Code § 2-725; N.J.S.A. § 12A:2-725; N.Y. C.L.S. U.C.C. § 2-725; N.C. Gen. Stat. § 25-2-725; Ohio Rev. Code Ann. § 1302.98; 13 Pa. C.S. § 2725; Tenn. Code. Ann. § 47-2-725; Tex. Bus. & Com. Code § 2.725; Va. Code. Ann. § 8.2-725.

[33] *See* Colo. Rev. Stat. § 13-80-101(1)(a); Conn. Gen. Stat. § 52-577(a).

[34] *See* Iowa Code Ann. § 554.2725 (five years); 12A Okla. Stat. § 2-725 (five years); Wisc. Stat. § 402.725 (six years).

51

injury.'") (quoting *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79 (Tex. 1977)); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 819 (S.D. Ohio 2012) (recognizing the "two forms of implied warranty claims"). The product misuse defense is a species of contributory negligence that applies to implied warranty claims sounding in tort.[35] It does not apply to contract-based implied warranty claims alleging a defective condition at the time of sale and seeking recovery based on purchase price as an economic loss.[36]

Since Plaintiffs' and the class members' implied warranty of merchantability and fitness claims seek recovery of contract-based purchase price damages, *see* CAC, ¶¶ 143, 169, 187, the product misuse defense does not apply.

For all of the reasons set forth, the Multi-State Implied Warranties Class satisfies Rule 23(b)(3)'s predominance requirement and should be certified.

### d. A class action is superior to other methods for Plaintiffs and the class' implied warranty claims.

A nationwide or multi-state class action is superior to other methods for Plaintiffs and class members' implied warranty claims. The relatively small amount of economic damages at issue and the fact that there has not been substantial litigation of these claims outside of this consolidated putative class action, weighs in favor of finding a class action superior. *See supra* Section IV.A.2.vi.3; *see also supra* Section III.A.

---

[35] *See*, *e.g.*, *Nicholson v. Am. Safety Util. Corp.*, 488 S.E.2d 240 (N.C. 1997) (state statute "codifies the common law standard of contributory negligence and does not limit the defense to a plaintiff's misuse of the product.").

[36] *See*, *e.g.*, *Tait*, 289 F.R.D. at 479 ("To the extent Defendant argues that its consumer misuse defense will require individual inquiries, this argument fails because the Ninth Circuit and other circuits have roundly rejected the relevance of such a defense where the plaintiff's theory is based on a design defect."); *id.* ("Plaintiffs' theory of liability is that they overpaid for a product because Defendant never warned consumers that the product had a defective design . . . . Plaintiffs need only prove that Defendant's products had a common design and the design created a propensity for the products to develop an undesirable condition . . . .").

Finally, a nationwide or multi-state implied warranty class action will be manageable for the reasons set forth as to predominance. *Supra* Section IV.B.3.ii.b*; see also Briseno*, 844 F.3d at 1128. The laws of either one state (Tennessee) or multiple states that are substantively identical under the U.C.C. will govern these claims. In either event, a single trial of the common issues of the obsolete motor oils' suitability for ordinary use or particularized use in post-1988 model vehicles based on the products' packaging, placement, and circumstances leading up to sale, will determine Dollar General's liability under both implied warranty theories. There are no state-specific issues concerning privity, notice, or product misuse that would require separate proceedings.

For these reasons, the Nationwide Implied Warranties Class should be certified, or, in the alternative, the Court should certify the Multi-State Implied Warranties Class.

**C.      Alternatively, the Court should certify Plaintiffs' U.C.C. state sub-classes for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and unjust enrichment.**

**1.      In the alternative to certifying the Nationwide Implied Warranties Class or the Multi-State Implied Warranties Class, the Court should certify state-subclasses as to Plaintiffs' implied warranty of merchantability and implied warranty of fitness for a particular purpose.**

Plaintiffs define the state sub-classes as all persons who are class members and who resided in the states of, respectively, California, Colorado, Florida, Illinois, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Texas, and Wisconsin, and who purchased Dollar General's obsolete motor oil on or after the state's specified statute of limitations date for use in vehicles manufactured after 1988 for DG Auto SAE 10W-30 and DG Auto SAE 10W-40 and after 1930 for DG Auto SAE 30. *See* Ex. 80. Each of these state sub-classes readily satisfies Rule 23(a) and (b)(3)'s requirements with respect to the breach of implied warranty claims.

53

### i. Rule 23(a)'s requirements are satisfied.

The state sub-classes satisfy the Rule 23(a) requirements. Class members are ascertainable as evidenced by the class definition. They are numerous: ███████ ███████ purchased Dollar General's obsolete motor oils between 2012 and 2017. ███████████████████ Dollar General sold at least the following numbers of quarts of obsolete oils in each respective state sub-class:

███  ███          ███  ███

*See id.* Each sub-class, consisting of thousands of members whose implied warranty claims are based on the modest price of quarts of motor oil, easily satisfies Rule 23(a)(1)'s numerosity requirement as joinder would be impracticable. *See Paxton*, 688 F.2d at 559-60.

The claims for breach of the implied warranties of merchantability and fitness for a particular purpose asserted by Plaintiffs and the state sub-class members, also satisfy commonality, typicality, and adequacy for the same reasons set forth for the Multi-State Implied Warranties Class. *See supra* Section IV.B.3.ii.a; *see also supra* Section IV.B.2.

### ii. Rule 23(b)(3)'s requirements are satisfied

#### a. Predominance of Common Issues of Law and Fact

Assuming application of each named Plaintiff and state sub-class member's home state laws, both breach of implied warranty claims present common questions of law and fact that predominate over the few, if any, individualized questions these claims present.

### i. Implied Warranty of Merchantability

All 17 sub-class states have adopted U.C.C. provision § 2-314(2),[37] and like discussed above, these U.C.C.-based statutory requirements provide objective standards that make implied warranty claims particularly suitable for Rule 23(b)(3) class certification.[38] *See supra* Section IV.B.3.i.a. The Court thus should hold that common issues predominate this claim for each state sub-class.

### ii. Implied Warranty of Fitness for Particular Purpose

Here again, all 17 sub-class states have adopted a U.C.C. provision as their law[39]: U.C.C. § 2-315, discussed above. Under this provision, the primary evidence supporting the sub-classes' claims are common to Plaintiffs' and each sub-class. *Id*. And although buyer reliance is also an element under these U.C.C.-based statutory claims for implied warranty of fitness for a particular

---

[37] *See* Cal. U. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Fla. Stat. § 672.314; 810 ILSC 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. § 355.2-314; Md. Code Ann. Com. Law § 2-314; Mich. Comp. Laws Serv. § 440.2314; Minn. Stat. § 336.2-314; Mo. Rev. Stat. § 2-314; Neb. Rev. Stat. (UCC) § 2-314; N.J. Stat. Ann. § 12A:2-314; N.Y.C.L.S. UCC § 2-314; N.C. Gen. Stat. § 2314; Ohio Rev. Code Ann. § 1302.27; Tex. Bus. & Com. Code § 2.314; Wis. Stat. Ann. § 402.314.

[38] *See*, *e.g.*, *GMC v. Bryant*, 285 S.W.3d 634, 639 (Ark. 2008); *Tait*, 289 F.R.D. at 485 (Calif. law); *Joseph*, 109 F.R.D. at 641-42 (Colo. law); *Engle*, 672 So.2d at 41 (Fla. law); *Flynn v. FCA US, LLC*, No. 15-cv-0855, 2018 U.S. Dist. LEXIS 111963, at *39-40 (S.D. Ill. July 5, 2018); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 611-12 (D. Kan. 2014); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 619-20 (Minn. law); *Claxton*, 2015 U.S. Dist. LEXIS 75605, at *12-13 (Mo. law); *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 U.S. Dist. LEXIS 109978, at *79-80 (D. Neb. Nov. 7, 2008); *In re Cadillac*, 461 A.2d at 745 (N.J. law); *Elkind v. Revlon Cons. Prods. Corp.*, No. 14-2484, 2017 U.S. Dist. LEXIS 24512, at *40-42 (E.D.N.Y. Feb. 17, 2017); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013) (Ohio law); *Microsoft v. Manning*, 914 S.W.2d 602, 605 (Tex. Ct. App. 1995).

[39] *See* Cal. U. Com. Code § 2315; Colo. Rev. Stat. § 4-2-315; Fla. Stat. § 672.315; 810 ILSC 5/2-315; Kan. Stat. Ann. § 84-2-315; Md. Code Ann. Com. Law § 2-315; Mich. Comp. Laws Serv. § 440.2315; Minn. Stat. § 336.2-315; Mo. Rev. Stat. § 2-315; Neb. Rev. Stat. (UCC) § 2-315; N.J. Stat. Ann. § 12A:2-315; N.Y.C.L.S. UCC § 2-315; N.C. Gen. Stat. § 2315; Ohio Rev. Code Ann. § 1302.28; Tex. Bus. & Com. Code § 2.315; Wis. Stat. Ann. § 402.315.

55

purpose,[40] the buyer's reliance is inferable for the same reasons discussed above. *See supra* Section IV.B.3.i.b.

The common issues of fact and law predominate to satisfy Rule 23(b)(3); thus, the state stub-classes should be certified. *See*, *e.g.*, *Joseph*, 109 F.R.D. at 641-42 (certifying class for implied warranty of fitness claims); *Engle*, 672 So.2d at 41 (same); *In re Cadillac*, 461 A.2d at 745 (same); *Miller*, 2008 Ohio App. LEXIS 3968, at *21-22 (same).

### iii. Absence of Dispositive Individualized Issues

There are no outcome-determinative issues of state law requiring individualized proof as among the 17 sub-class states.

#### 1. Vertical Privity

As discussed above, the fact that several states require vertical privity of contract does not raise individualized proof issues in this case because the obsolete Dollar General motor oils at issue are *store-branded* products where the contracting seller and the warranting manufacturer are one and the same. *Supra* Section IV.B.3.i.a.

#### 2. Notice of Breach

None of the 17 sub-class states' notice requirements present an outcome-determinative individualized proof issue that precludes class certification.

---

[40] *See*, *e.g.*, *Keith*, 173 Cal. App. 3d at 25; *Klipfell*, 494 P.2d at 117 (Colorado law); *Smith v. Burdine's, Inc.*, 198 So. at 229 (Florida law); *Bethlehem Steel*, 863 F.2d at 516 (Illinois law); *Golden*, 276 P.3d at 779 (Kansas law); *Ford Motor Co*, 779 A.2d at 375 (Maryland law); *McCray Refrig. & Cold Storage Co. v. Woods*, 58 N.W. 320, 321 (Mich. 1894); *Davies v. Motor Radio Co.*, 236 S.W.2d 409, 414 (Mo. Ct. App. 1951); *Outlook Windows P'shp v. York Int'l. Corp.*, 112 F. Supp. 2d 877, 899 (D. Neb. 2000); *New Jersey Transit Corp.*, 497 F.3d at 329 (New Jersey law); *Spinella*, 127 N.Y.S.2d at 644; *Southeastern Adhesives*, 366 S.E.2d at 508 (North Carolina law); *Norcold*, 798 N.E.2d at 619 (Ohio law); *New Holland*, 470 S.W.2d at 238 (Texas law); *Calumet Cheese Co*, 130 N.W.2d at 295 (Wisconsin law).

56

The Courts in six of the 17 states—California, Colorado, Illinois, Ohio, Texas, and Wisconsin—hold that an implied warranty defendant has notice of breach when it has actual knowledge of the product's non-conforming condition, which Dollar General did.[41]

The courts in four other of these 17 states plus one listed above – Colorado, Kansas, New Jersey, New York, and North Carolina – hold that for retail consumers, the filing of a lawsuit satisfies the notice-of-breach requirement.[42] The filing of this nationwide and multi-state class action thus gave Dollar General the required notice for the consumer class members in these states.

In addition, the named Plaintiffs representing two of the remaining states – Florida and Maryland – gave Dollar General pre-suit notice. *See* CAC, ¶¶ 164-65. Dollar General thus had notice of its breaches under the laws of 12 of the 17 sub-class states. Although the five remaining sub-class states – Kentucky, Michigan, Minnesota, Missouri, and Nebraska – have pre-suit notice requirements, courts in those states have granted Rule 23(b)(3) class certification for implied warranty claims under these states' laws without addressing satisfaction of this requirement.[43] Thus, notice was given or it is not outcome determinative. So satisfaction of the

---

[41] *See*, *e.g.*, *Metowski*, 28 Cal. App. 3d at 339; *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 73690, at *34 (Calif. law); *Palmer*, 684 P.2d at 207 n.3 (Colo. Law) *Arcor*, 960 F.2d at 715 (Ill. law); *Galoski*, 2015 U.S. Dist. LEXIS 114663, a *18-19 (Ohio law); *Coppock*, 121 F. Supp. 3d at 669 (Texas law); *Cornerstone Design*, 2007 Wis. App. LEXIS 540, at *18-19.

[42] *See*, *e.g.*, *Wallman*, 976 P.2d at 332 (Colo. Law); *Graham*, 666 F. Supp. at 1500 (Kansas law); *Cipollone*, 683 F. Supp. at 1498 (N.J. law); *Sloan*, 287 F. Supp. 3d at 884-85 (N.Y. law); *Maybank*, 273 S.E.2d at 685 (N.C. law).

[43] *See*, *e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 619-20 (Minn. law); *Claxton*, 2015 U.S. Dist. LEXIS 75605, at *12-13 (Mo. law); *see also In re Saturn*, 2008 U.S. Dist. LEXIS 109978, at *30-32 (denying motion to dismiss class claims; addressing Mo. and Neb. law).

U.C.C.-based statutory notice requirement should not be held to present a predominating individualized proof issue under any of the sub-classes' state laws.

### 3.    *Statutes of Limitations*

The applicable statutes of limitations of the 17 sub-class states also do not present individualized issues because each of the sub-classes is defined based on the time period that satisfies the applicable statute. *See* Ex. 80 (setting forth the applicable class period for each state sub-class).

### 4.    *Buyer Misuse of the Product*

For the same reasons discussed above, the product misuse defense does not apply to these claims for contract damages. *Supra* Section IV.B.3.ii.c.iv.

For all of these reasons, the 17 state sub-classes satisfy Rule 23(b)(3)'s predominance requirement with respect to the breach of implied warranty claims and should be certified.

### b.  **Superiority of a Class Action**

A class action including or comprised of the 17 state sub-classes is superior to other methods of proceeding for members' implied warranty claims for the same reasons provided for the Nationwide and Multi-State Implied Warranties Classes. *Supra* Section IV.A.2.vi.3.

A class action including or comprised of the 17 state sub-classes will be manageable for the reasons set forth as to predominance. *See supra* Section IV.C.1.ii.a; *see also Briseno*, 844 F.3d at 1128. The laws of the 17 states that are substantively identical to the elements of the two U.C.C.-based claims will govern. And a single trial of the common issues will determine Dollar General's liability under both implied warranty theories. There are no state-specific issues concerning privity, notice, or product misuse that would require separate proceedings.

Because a class action including or comprised of the 17 state sub-classes presents predominating common issues of fact and law, is readily manageable, is superior to any other manner of proceeding, it should be certified.

**D.** **The Court should certify a class regarding Plaintiffs' state unfair trade practices/consumer fraud statutory claims.**

Class certification is appropriate for Plaintiffs' statutory consumer protection claims, which are asserted on behalf of state-specific sub-classes.[44] The core elements among these statutory claims include: (1) Defendants' deceptive, unlawful, unconscionable, unfair, or misleading acts or practices (2) resulting in economic damage to the Plaintiffs. *See generally* Pls.' Suggestions in Opp. to Defs.' Mot. To Dismiss, Doc. # 89 at 16-28. The Court has already determined Plaintiffs have pleaded facts sufficient to state a claim under each of these consumer protection statutes:

---

[44] California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; California's False and Misleading Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; California's Consumer Legal Remedy Act, Cal. Civ. Code § 1750 *et seq.*; Colorado's Uniform Deceptive Sales Practices Act, Colo. Rev. Stat. § 6-1-105 et seq.; Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Florida's Misleading Advertising Law, Fla. Stat. § 817.41 *et seq.*; Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 510/1 *et seq.*; Kansas's Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*; Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220 *et seq.*; Maryland's Consumer Protection Act, Md. Code. Ann. Com. Law § 13-101 *et seq.*; Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*; Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*; Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*; Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*; Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.*; Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.*; New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 349 and § 350; North Carolina's Consumer Protection Act, N.C. Gen. Stat. § 75-1.1 *et seq.*; Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*; Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*; Wisconsin's Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 *et seq.*; Wisconsin's Unfair Methods of Competition and Trade Practices Act, Wis. Stat. Ann. § 100.20 *et seq*. Note, Plaintiffs' claims under the following consumer protection statutes have been voluntarily dismissed: Arkansas' Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.; Vermont's Consumer Fraud Act, Vt. Stat. Ann. § 2451, *et seq.*

59

> Plaintiffs allege that Defendants sold obsolete motor oil to unsophisticated customers by purposefully placing the motor oil beside widely-useful motor oils that are produced by well-known manufacturers. Plaintiffs further contend that this marketing scheme deceptively induced these customers into buying a worthless product that would likely damage their vehicles. Accepting these claims as true, it follows that Defendants' motion to dismiss Plaintiffs' consumer protection claims for failure to recite a cognizable deceptive practice must fail.

Order re Defs.' Motion to Dismiss, Doc. # 117 at 45-46. The claims arising from each of these sub-classes are subject to common proof and implicate predominantly common questions of fact and law that justify certification.

### 1. Plaintiffs' sub-classes asserting statutory consumer protection claims satisfy Rule 23(a).

Plaintiffs have proffered evidence demonstrating a specific and intentional course of conduct by Dollar General: the branding, labeling, marketing, and sale of obsolete DG Auto motor oil during the relevant class period. *See supra* Section II. Whether Dollar General's conduct constitutes culpable acts or practices under Plaintiffs' consumer protection claims (*i.e.*, acts or practices that are deceptive, unlawful, unconscionable, unfair, or misleading) is an issue capable of class wide resolution*, see Sandusky Wellness Ctr., LLC*, 821 F.3d at 998, using common evidence demonstrating that: vendors, suppliers, and customers reported to Dollar General how the DG Auto motor oil was obsolete and caused damage to modern-day vehicles; despite Dollar General's knowledge that its oil was obsolete, it continued, year after year, to actively decide to sell the obsolete motor oil  instead of a newer specification motor oil because it was better for its bottom line;  Dollar General removed its front-label warning that informed the consumer that the motor oil should only be used in cars made before 1988; the only warning Dollar General gave consumers was in fine-print on the back of its motor oil bottles; Dollar General positioned its obsolete motor oil next to name-brand motor oil (which can be used in cars made after 1988) making it seem like the DG Auto brand was just the cheaper store-brand

version of the motor oil, when in fact it was not; etc. *See also supra* Section II and IV.B.3.i.b.

Accordingly, the commonality requirement is met.

With respect to the other elements of Rule 23(a), Plaintiffs have demonstrated that each

of the sub-classes, consisting of thousands of members, satisfy the numerosity requirement, and

the claims asserted by Plaintiffs are typical of the class members for each sub-class. *See also*

*supra* Section III.A and IV.B.ii.a; Pls.' Suggestions in Opp. to Defs.' Mot. To Dismiss, Doc. #

89. Adequacy is satisfied for the reasons discussed *supra* Section VI.A.1. Plaintiffs have satisfied

Rule 23(a)'s requirements.

## 2. Plaintiffs' sub-classes asserting statutory consumer protection claims satisfy Rule 23(b).

Plaintiffs' consumer protection claims also meet the requirements of Rule 23(b)(3).

### i. Common questions of liability predominate over any required individualized showing of reliance.

Common questions predominate on the issue of reliance.[45] In reliance cases, the Eighth

Circuit finds certification unsuitable where there is variation as to "the representations made or in

the kinds or degrees of reliance by the persons to whom they were addressed." *In re St. Jude*

*Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) (quoting *Darms v. McCulloch Oil Corp.*, 720 F.2d

---

[45] The claims which <u>do require</u> a showing of reliance are as follows: California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; California's False and Misleading Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; California's Consumer Legal Remedy Act, Cal. Civ. Code § 1750 *et seq.*; Florida's Misleading Advertising Law, Fla. Stat. § 817.41 *et seq.*; Maryland's Consumer Protection Act, Md. Code. Ann. Com. Law § 13-101 *et seq.*; Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*; Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*; Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*; New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 350; Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*; Wisconsin's Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 *et seq.*; Wisconsin's Unfair Methods of Competition and Trade Practices Act, Wis. Stat. Ann. § 100.20 *et seq*. This list is not in dispute. *See* Doc. # 85-89 (Defs.' Mtn. to Dismiss, Ex. I [Chart Summarizing Causation/Reliance and Actual Damages Requirements of Consumer Protection Statutes]).

61

490, 493 (8th Cir. 1983)).The most obvious instance of individual reliance precluding certification is where a defendant "did not adopt a uniform approach with respect to its representation[s.]" *Avritt,* 615 F.3d at 1034-35; *see also, e.g., Ramthun v. Bryan Career College-Inc.*, 93 F. Supp. 3d 1011, 1024 (W.D. Ark. 2015) (certification denied where plaintiffs "failed to demonstrate that common evidence will resolve whether an affirmative misrepresentation of fact was made to each putative class member in the first place").[46] For example, in *Avritt*, the plaintiffs purchased fixed deferred retirement annuities and, alleged that the defendant engaged in unfair and deceptive interest-crediting practices in violation of California and Minnesota's consumer protection statutes. 615 F.3d at 1026-28. The Eighth Circuit held individual issues predominated because the defendant did not have a uniform approach with respect to its representations about its interest-crediting policies, and because one of the plaintiffs "purchased his annuity without investigating the product and with little idea of what interest rate he would receive." *Id.* at 1035.

Similarly, in *St. Jude Med.*, the Eighth Circuit held individual issues of reliance precluded certification under Minnesota's consumer protection statute because of variations in the representations made by the defendant and variations in who was exposed to those different representations. 522 F.3d at 838. *St. Jude Med.* involved alleged false representations about a prosthetic heart valve, and the defendant showed that many of the named class representatives and their doctors had received varying representations and some had <u>never been exposed</u> to any misrepresentations about the device, so individual reliance issues precluded certification of the consumer protection claims. *Id.* at 839.

---

[46] The *Ramthun* court noted that a case based on omissions was more likely to be certified, but found that the plaintiffs provided no basis as a matter of law showing a duty to disclose information. *Id.* at 1025-26.

Unlike *St. Jude Med.* and *Avritt*, Plaintiffs have established a uniform course of conduct on the part of Dollar General. Throughout the relevant period, the labels on the DG Auto motor oil products were the same; the misrepresentations and omissions were uniform across the classes; each class member was exposed to the same label omission as well as the same misleading and confusing advertising, branding, and product placement; and the class members were not exposed to any other representations about the DG Auto motor oil (*e.g.*, television, radio, print advertising, etc.). Courts in the Eighth Circuit have found *St. Jude Med.* does not preclude certification where the plaintiff has shown uniformity of conduct and universal exposure to a misrepresentation or omission. *See, e.g., Mooney v. Allianz Life Ins. Co. of N. Am.,* No. 06-545 ADM/FLN, 2008 U.S. Dist. LEXIS 57324, at *8 ("whereas significant factual issues existed in *St. Jude II* regarding whether an individual plaintiff received a representation from St. Jude, here each class member received and acknowledged reading the materials that recited Allianz's representations regarding the bonus").

Further, no reasonable class members would have purchased DG Auto motor oil brand if they had known the product was obsolete and not safe for use in their automobiles. Plaintiffs' expert survey shows that consumers shopping at Dollar General are likely to be misled as to the suitability of obsolete DG Auto motor oils for use in modern automobiles. *See* Scott Report, Ex. 41.

> **ii. Plaintiffs' also satisfy predominance as to their statutory consumer protection claims that do not require an individualized showing of reliance.**

Plaintiffs also meet the predominance requirement for the consumer protection claims

that do *not* require a showing of individualized reliance.[47] Courts in the Eighth Circuit have held

that class wide reliance can be presumed in some states, where the defendant employs a uniform

scheme of misrepresentations or omissions to which all class members were exposed, the precise

scenario here. *See In re Hardieplank Fiber Cement Siding Litig,* No. 12-md-2359, 2018 U.S.

Dist. LEXIS 90, at *48-51 (D. Minn. Jan., 2, 2018) (class wide reliance can be presumed where

"the misrepresentation at issue was clearly presented to every class member, such as when it was

on the label of a consumer product that every class member purchase"). With respect to

Colorado's Uniform Deceptive Trade Practices Act, Col. Rev. Stat. § 6-1-105, *et seq.*, which

does not require a showing of individualized reliance, the *Hardieplank* court observed

"presuming or inferring reliance is proper when plaintiffs are able to establish material

misrepresentations to the class on a common basis." *Id.* (quoting *Patterson v. BP Am. Prod. Co.,*

240 F.3d 456, 465-67 (Colo. Ct. App. 2010)). Similarly, under Missouri's Merchandising

Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*, the court in *Glen v. Fairway Indep. Mortg.*

*Corp.* held that, "[b]ecause the class claim is based upon a promise given to all putative class

members in a form contract and can be proven with common evidence, individualized inquiries

are not necessary and do not defeat class certification." 265 F.R.D. 474, 481 (E.D. Mo. 2010);

---

[47] The state statutes which do not require a showing of reliance are as follows: Colorado's Uniform Deceptive Sales Practices Act, Colo. Rev. Stat. § 6-1-105 et seq.; Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 510/1 *et seq.*; Kansas's Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*; Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220 *et seq.*; Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*; Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.*; Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.*; New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 349; North Carolina's Consumer Protection Act, N.C. Gen. Stat. § 75-1.1 *et seq.*; Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.* This list is not in dispute. *See* Doc. # 85-9 (Defs.' Mtn. to Dismiss, Ex. I [Chart Summarizing Causation/Reliance and Actual Damages Requirements of Consumer Protection Statutes]).

*see also Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446, 453-56 (D. Neb. 2010) (predominance was satisfied because the entire class received the same letter that allegedly violated the Nebraska Consumer Protection Act., Neb. Rev. Stat. § 59-1601, *et seq.*). As in those cases, Plaintiffs' claims under the relevant consumer protection statutes that do not require an individualized showing of reliance satisfy the predominance requirement because the label on the DG Auto motor oil products was the same, the misrepresentations and omissions were uniform across the sub-classes, and each class member was exposed to the same misrepresentations and omissions.

> **3.      A class action is superior to any other available methods for fairly and efficiently adjudicating Plaintiffs' consumer protection claims.**

Plaintiffs' also satisfy Rule 23(b)'s superiority requirement for the same reasons set forth above. *See supra* Section IV.A.2.vi.3. Thus, a class action is the superior vehicle to prosecute this case as compared with other available methods.

> **E.      The Court should grant Plaintiffs' Motion for certification as to the statewide unjust enrichment classes, if it does not certify the Nationwide Unjust Enrichment Class.**

If the Court were to deny certification of Plaintiffs' Nationwide Unjust Enrichment Class, the Court should nevertheless certify each of Plaintiffs' statewide unjust enrichment classes. In addition to the nationwide classes, Plaintiffs' defines sub-classes based on the laws of each state in which an individual Plaintiff has brought a member case. Ex. 80. For the reasons discussed in Section ___, Plaintiffs contend this case warrants certification of a nationwide class for their unjust enrichment claims.  But if the Court determines a nationwide class is not appropriate, the Court should instead certify each of the statewide sub-classes.

> **1.      Rule 23(a) requirements are met for each statewide sub-class.**

For the same reasons Plaintiffs' Nationwide and Multi-State Unjust Enrichment Classes satisfy Rule 23(a), so too do Plaintiffs' statewide unjust enrichment sub-classes. *See supra* Section IV.A.1; IV.B.3.ii.b. With regard to the numerosity requirement, although obviously less numerous than a nationwide class, any reasonable estimate of the size of the class in each state in which DG Auto motor oil was sold would be more than sufficiently numerous for certification. (DG01016049, Ex. 71; DG15000001, Ex. 72). As for commonality, the analysis for the statewide class is exactly the same as that provided for the nationwide class. Each of the respective class representatives purchased DG Auto motor oil within the class period and are seeking relief demanded in Plaintiffs' CAC on behalf of the class members, satisfying the typicality and adequacy requirements. (Ex. 80). The additional considerations of adequacy, *i.e.*, competence of Plaintiffs' counsel and willingness to prosecute the case.

### 2. Rule 23(b)'s requirements are also met for each statewide sub-class.

The requirements of Rule 23(b) are also satisfied by the statewide unjust enrichment classes for the same reason the nationwide class satisfies those requirements, but a conflict of laws analysis is unnecessary for the statewide sub-classes. *See supra* Section IV.A.2, 3. The questions of fact implicated for each of the statewide sub-classes are subject to the same common evidence as those implicated for the nationwide class, so predominance is satisfied. *See id*. Superiority is also satisfied for the reasons outlined above. *See supra* Section IV.A.3.

### F. Plaintiff Jason Wood and other class members with property damage claims.

Because Dollar General's obsolete motor oil was harmful to modern vehicles, many class members suffered damage to their vehicles, such as sludge build-up, as well as foreseeable consequential damages associated with the loss of the vehicle, in addition to the common damages associated with all class members' purchase of obsolete motor oil. Plaintiff Jason Wood

66

used obsolete DG Auto motor oil in his 2008 Chevy Colorado truck repeatedly over a 2½ year time period. (Wood Depo. at 44:8-45:11, Ex. 84). Mr. Wood testified that he purchased and used an estimated 50 quarts of obsolete DG Auto 10W-40 motor oil during this time, using 5 quarts at a time when he changed his oil every 3000 miles. (*Id.*). The engine in Mr. Wood's truck blew, after which he had it towed to the local dealership where a mechanic attributed the cause of failure to the use of obsolete motor oil. (*Id.* at 17:19-18:4, 25:21-27:4). Sludge build-up is specially identified by API as a harm caused by the use of SF rated obsolete motor oil. Plaintiffs' expert Mark Allen reviewed the available evidence and confirmed that Mr. Wood's engine failure was due to internal engine sludge buildup caused by the use of obsolete DG Auto motor oil. (Allen Report at 9, Ex. 85). Mr. Allen, an experienced mechanic with diagnostic experience (often for insurance companies) also relied on Dr. Jackson's expert report. In addition to the damage Mr. Wood sustained by his repeated purchases of the obsolete DG Auto motor, he has additional damages in the amount of the book value of his truck at the time its engine seized, which he testified was $11,798. (Wood Depo. at 72:18-73:2, Ex. 84).

Plaintiff Wood is entitled to recover this amount as consequential damages allowed under his breach of implied warranty claim and is prepared to try his claim. Similarly, other members of the nationwide implied warranty class who also have sustained property damage as the result of using Dollar General's obsolete motor oil should have the ability to prove their entitlement to additional damages.[48] These additional claims are referred to herein as "property damage claims" and those class members with such claims are referred to as "property damage class members." Mr. Wood acknowledges that issues of specific causation and the amount of his property damage claim raises manageability concerns that by themselves would weigh against Rule 23(b)(3) class

---

[48] The class-wide damages sought for the nationwide breach of implied warranty class discussed above seeks only damages associated with the purchase price of the DG Auto obsolete motor oil.

67

certification. However, given the vast number of common issues associated with Dollar General's liability, general causation and damages associated with the purchase of Dollar General's obsolete motor oil, the efficiencies of the class action mechanism should not be lost for Mr. Wood and other class members with additional damage beyond the common class-wide damages discussed above. There are many management tools available to the Court to address the additional property damage claims of Mr. Wood and other class members.[49]

First, the Court could bifurcate the litigation into two phases in a manner similar to that in *Augustin v. Jablonsky*, 819 F.Supp.2d 153 (E.D.N.Y. 2011). Phase I would consist of the trial of the two nationwide class claims and the 17 state sub-classes on Plaintiffs claims' of breach of implied warranty, unjust enrichment, and violations state consumer protection statutes as set forth in Exhibit 80. Assuming Plaintiffs prevail, Phase I would conclude with an award of class-wide damages relating to class members' purchase of Dollar General's obsolete motor oil. Many class members will have obtained complete relief in Phase I, leaving only those class members with additional property damage claims for Phase II.[50] For Phase II, the Court would decertify the classes and anyone wishing to proceed on their property damage claim would then be permitted to proceed in individual cases or by a special master to prove their entitlement to

_____

[49] *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."), *overruled on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006).

[50] Class counsel has heard from thousands of class members complaining of property damages many of which were similar to the type of harms discussed in Dr. Jackson's expert report, including sludge build-up. Class counsel asked for permission to file cases directly into the MDL, but since Dollar General objected, the Court refused this request.

68

additional damages.[51]

A second alternative is to employ the provisions of Rule 23(c)(4) for issue certification. Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Similar to the *Augustin* approach discussed above, an issue-class approach would contemplate a bifurcated trial for Mr. Wood and other property damage class members where common issues of liability and general causation are tried first in conjunction with the class claims of the other Plaintiffs and class members, followed by individual trials on the issues of specific causation and damages.

Issue certification was designed to give courts additional flexibility in handling class actions and it provides the specific advantages of "conserving institutional resources by avoiding duplicative litigation, ensuring that similarly situated plaintiffs are treated similarly, and allowing for the advancement of claims that individual plaintiffs would lack the incentive or ability to bring." 2 Newberg on Class Actions § 4:90 (5th ed.); 7AA Fed. Prac. & Proc. Civ. § 1790 (3d ed.); *see also, e.g., Martin v. Behr Dayton Thermal Prods., LLC*, 896 F.3d 405 (6th Cir. 2018) (affirming Rule 23(c)(4) certification of liability and general causation issues in toxic exposure action); *In re Copley Pharmaceutical, Inc.*, 158 F.R.D. 485, 491 (D. Wyo. 1994) (certifying class on issues of liability: strict liability, negligence, negligence per se, breach of warranties, and requests for declaratory relief); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 593

---

[51] The question of property damages is not wholly dependent on individual factors as Dollar General will suggest. It is in large part a chemistry problem. By way of analogy, *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 390-92 (3d Cir. 1981) is a class action sex-discrimination employment case where the trial court found in the liability phase of the litigation that the employer had a policy of discrimination against women. In the damages phase, the court ordered the class members to submit claim forms to a special master who would presume each claim valid and consider any employer challenges at a hearing. *See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 816-17 (3d Cir. 1995) (emphasizing in a class action that section 2-714 (1) of the U.C.C. allows for damages "as determined in any manner which is reasonable.").

(S.D.N.Y. 2013) (on reconsideration, decertifying class as to damages but confirming certification on issues of liability); *In re Motor Fuel Temp. Sales Prac. Litig.*, 292 F.R.D. 652 (D. Kan. 2013) (certifying classes on issue of liability); *Sellars v. CRST Expedited, Inc.*, 321 F.R.D. 578 (N.D. Iowa 2017) (certifying common issues through four alleged patterns and practices in hostile work environment claim).

For purposes of this litigation, the majority of class members will proceed with their claims through the two nationwide classes and/or the 17 state sub-classes and obtain complete relief. To take advantage of the class action proceedings for Mr. Wood and other property damage class members, common issues of Dollar General's liability and issues of general causation (*i.e.*, whether Dollar General's obsolete motor oil causes damage to modern engines) could be certified pursuant to Rule 23(b)(3) using the same analysis discussed above. Thereafter, each property damage claim class member would be able to proceed on an individual basis to establish specific causation and damages.[52]

The arguments supporting class certification for the property damage claim issues of liability and general causation associated with Dollar General's breach of implied warranty are essentially the same as those discussed above with respect to the nationwide implied warranty

---

[52] Under this scenario, the nationwide implied warranty class would need to be sub-classed to allow for issue certification. The main nationwide implied warranty class would be defined to exclude those class members who seek property damage claims: "All persons in the United States who purchased Defendants' DG-branded motor oil, DG SAE 10W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988 and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for re-sale and excluding any person whose seeks reimbursement for damage to their vehicle(s) as the result of their use of such product(s)." Those individuals seeking to bring property damage claims would then be part of the following sub-class for certification of liability and general causation issues: "All persons in the United States who purchased Defendants' DG-branded motor oil, DG SAE 10W-30 and/or DG SAE 10W-*40 for use in vehicles manufactured after 1988 and/or DG SAE 30 for use in vehicles manufactured after 1930*, for personal use and not for re-sale and who seek reimbursement for damage to their vehicle(s) as the result of their use of such product(s)."

class. With respect to these issues, Mr. Wood's claims are typical of the claims of the other property damage claimants, and common issues associated with liability and general causation predominate. The proof to establish Dollar General's breach of implied warranty will be the same for Mr. Wood as for the other property damage claimants, and it will also be the same for the nationwide implied warranty class, as set forth above.

The numerosity requirement for the property damage claim issues class is also satisfied. In addition to Mr. Wood and the individuals who have contacted Dollar General to complain about damage to their vehicles resulting from their use of obsolete DG Auto motor oil,[53] Plaintiffs' counsel have communicated with thousands of absent class members who claim to have sustained damage to their vehicles following the use of DG's DG Auto motor oil.[54] (De Llano Decl., Ex. 86). Mr. Wood is an adequate class representative for this sub-class. (Wood Aff., Ex. 82).

The primary concern of courts when addressing issue certification is superiority and manageability. *In re Tetracycline Cases*, 107 F.R.D. 719, 732 (W.D. Mo. 1985) (finding that issue certification requires that a class-wide resolution of the certified issues will materially advance a disposition of the case as a whole and that the predominance is subsumed by the superiority requirement). Courts declining to grant issue certification typically do so when they find that the issues left behind for individual determination are so significant that common proceedings will not materially advance the conclusion of the litigation. 1 MCLAUGHLIN ON

---

[53] Documents produced by Dollar General identify at least 15 Dollar General customers complaining of damage to vehicles as the result of using Dollar General's obsolete motor oil.

[54] Dollar General presumes there are few individuals with such claims, given that only a limited number of its customers contacted it to complaint of vehicle damage. However, because of the damage to vehicles is more like a cancer than a heart attack (DG04012463, Ex. 11), the delay between the use of the obsolete motor oil and the damage makes it difficult to trace the damage to Dollar General's products. (ILMA-002134 at p.4, Ex. 13).

CLASS ACTIONS § 4:43 (14th ed.). On the other hand, decisions certifying a common issue usually relate to circumstances, like here, where the defendant engaged in a unified course of conduct. *Id.*

Issue certification will materially advance the disposition of this litigation. Unlike many of the cases declining to grant issue certification, if the Court grants Plaintiffs' motion for class certification with respect to the nationwide implied warranty class, the certified issues for this group of property damage claimants will be identical. In other words, the class claims would be proceeding at the same time as the issues sub-class. At the conclusion of the class action trial, the only remaining issues will be specific causation and individual damages for the property damage class members, which can utilize one of the methods described above. Conversely, if these issues are not certified, the property damage class members will need to present identical proof to establish liability and general causation in their individual actions, which is neither efficient nor economical. Moreover, with respect to the common issues of liability and general causation, the interest of the property damage class members in individually controlling the prosecution of their separate claims is minimal, particularly in light of the fact that the amount of damage at issue is relatively small in light of the costs required to pursue those individual claims. *In re Tetracycline Cases*, 107 F.R.D. at 732. "[I]n a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." *In re Motor Fuel Temp. Sales Prac.Litig.*, 292 F.R.D. 652, 675 (D. Kan. 2013) (quoting Fed.R.Civ.P. 23(c)(4) Advisory Committee Note). Thus, issue certification presents a manageable and efficient alternative for the Court to address the additional property damage claims.

## V. CONCLUSION

72

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant their motion for class certification and certify their proposed classes, appoint the named Plaintiffs as class representatives and appoint their counsel as Class Counsel.


Dated: August 20, 2018    Respectfully submitted,

          */s/ Kenneth B. McClain*
          Kenneth B. McClain
          Kevin D. Stanley
          Colin W. McClain
          J'Nan C. Kimak
          Andrew K. Smith
          HUMPHREY FARRINGTON & MCCLAIN, P.C.
          221 West Lexington, Suite 400
          Independence, Missouri 64050
          Telephone: (816) 836-5050
          Facsimile: (816) 836-8966
          kbm@hfmlegal.com
          kds@hfmlegal.com
          cwm@hfmlegal.com
          jck@hfmlegal.com
          aks@hfmlegal.com
          *Liaison Counsel for Plaintiffs*

          *and*

          Allan Kanner
          Cynthia St. Amant
          KANNER & WHITELEY, LLC
          701 Camp Street
          New Orleans, LA 70130
          Tel: (504) 524-5777
          Fax: (504) 524-5763
          a.kanner@kanner-law.com
          c.stamant@kanner-law.com
          *Lead Counsel for Plaintiffs*


**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send e-mail notification of such filing to all attorneys of record in this action.

/s/ Kenneth B. McClain

74